[Cite as *Corrao v. Corrao*, 2016-Ohio-4862.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103411**

# ERICA C. CORRAO

PETITIONER-APPELLANT

vs.

# ANTONIO CORRAO, III

RESPONDENT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. DV-14-352072

**BEFORE:**   Jones, A.J., E.A. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**   July 7, 2016

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Carolyn C. Soeder
Stafford Law Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114


**ATTORNEY FOR APPELLEE**

Michael J. Connick
Gary A. Vick
Connick & Vick Company, L.P.A.
25550 Chagrin Blvd., Suite 101
Cleveland, Ohio 44122

LARRY A. JONES, SR., A.J.:

{¶1} Petitioner-appellant Erica Corrao appeals from the trial court's August 18, 2015 judgment, issued after a full hearing, denying her petition for a domestic violence civil protection order. We affirm.

## I.   Procedural and Factual History

{¶2} On May 15, 2014, Erica filed a petition for a protection order under R.C. 3113.31. She sought the order against her then husband, respondent-appellee Antonio Corrao, III. She sought the order for herself and the parties' two minor children (dates of birth November 23, 2007 and April 14, 2010). As grounds for the petition, Erica alleged the following:

> On or about March 27, 2014, Respondent grabbed Petitioner by the neck, choked Petitioner, banged Petitioner's head against the wall — all done in the presence of the parties' [youngest] child. [The child] pleaded with his father to stop "hurting mommy." Later that evening Respondent forced Petitioner to engage in inappropriate sexual relations with Respondent against her will. There has been a prior history of domestic abuse of Petitioner by Respondent.

{¶3} The court held an ex parte hearing the same day Erica filed the petition. Erica testified about the March incident, which arose after Antonio saw her texting on her phone and became enraged. Erica testified that Antonio "grabbed [her] by the neck to where [she] couldn't breathe, slammed [her] up against the wall [and] banged [her] head [on] the wall." Erica testified that the parties' youngest child had to bite Antonio to get him off of her. According to Erica, after the incident, Antonio told her that he would stay

with her if she had anal sex with him. She agreed, but during the course of the relations, she told him that it hurt and asked him to stop, but he continued. According to Erica, she and Antonio did not routinely engage in anal sex.

{¶4} A few days after the incident, Antonio moved out of the marital home, but he returned in May 2014, and Erica filed the subject petition. Erica told the court, "I can't live with him. I'm scared of him." The court granted the motion at the conclusion of the ex parte hearing. The order was effective until May 14, 2015, and protected Erica and the parties' two minor children.

{¶5} In September 2014, the parties agreed to the removal of the children from the order. In May 2015, the order was extended until November 2015. In June 2015, Antonio filed a motion to vacate the order. The trial court held a full hearing on July 20 and 21, 2015, at which the following testimony was elicited.

{¶6} As mentioned, the parties were husband and wife. Erica filed this petition for a protective order contemporaneously with filing for a divorce from Antonio. The parties' divorce was finalized in November 2015.[1] This court, over Antonio's objections, allowed Erica to supplement the record with the parties' November 17, 2015 judgment entry of divorce.[2]

{¶7} The March 2014 incident was the cited impetus for Erica to seek the order.

---

[1] The same trial judge who presided over this action also presided over the divorce proceedings.

[2] *See* motion nos. 491166, 491172, and 491411.

Erica testified about the incident at the full hearing and reiterated her testimony from the ex parte hearing, except at the full hearing she testified that Antonio grabbed her phone out of her hand as she was texting and that she, not her child, bit Antonio to get him off of her. Erica also testified that Antonio ran out of the home with her cell phone, she went out of the home after him, but stopped because her son was questioning her about what was going on.

{¶8} Antonio also testified at the hearing. According to him, relative to the March 2014 incident, he sat on the parties' bed and Erica's phone "slid" down the sheets to him. He looked at the phone and saw that Erica had been "sexting" with another man. Erica then became "panicked" and "attacked" him; he testified that Erica, who was approximately 5'1" and 100 pounds, "manhandled" him; he testified that he was approximately 6'3"and 200 pounds. In regard to the sexual activity, Antonio testified that Erica wanted to have sex and that she never told him to stop during the encounter.

{¶9} In addition to her allegations surrounding the March 2014 incident, Erica also sought to establish alleged prior incidents of domestic violence. Specifically, she called a custodian of records for the Cleveland Clinic, who had treatment notes from a 2013 well visit of one of the parties' children. According to Erica, the records indicated that the child told a nurse about domestic violence in the home. The trial court did not admit the records into evidence.

{¶10} Erica also testified about an incident in 2013 when the parties had been at a bar watching a Cleveland Browns game. According to Erica, she went outside to smoke

a cigarette and Antonio, who was drunk, came out and told her it was time to go. Erica initially called a friend to come get her, but ended up getting in the car with Antonio. Erica testified that Antonio was going 90 miles per hour on the highway, calling her profane names, and said that they were going to die together.

{¶11} Erica testified that she was still fearful of Antonio because he "has no remorse whatsoever." She asked the court to leave the protection order in place because, prior to the court granting it, she would come home and find the garage door open, the doors to the house unlocked, and the air conditioning temperature changed, all of which she attributed to Antonio's doing.

{¶12} Erica's mother testified. According to her, Antonio admitted to her that he had been violent with Erica in the past, but that it was not a regular occurrence in their relationship. Antonio denied having ever told Erica's mother that, however. The mother also testified that she saw bruising on her daughter the day after the March 2014 incident. According to the mother, although there have not been any incidents between the parties when they exchange the children, Erica makes her interaction with Antonio as quick as possible and appears nervous around him.

{¶13} After the hearing, the court issued its judgment denying Erica's petition. The trial court found "neither party particularly credible. Both descriptions of the events which took place in March 201[4] are equally plausible and unfortunate. Both parties are equally lacking in candor." The court found that, based on the testimony and evidence presented, Erica did not prove, by a preponderance of the evidence, that Antonio

committed an act or acts of domestic violence. The court further found that Erica did not prove, by a preponderance of the evidence, that she, her family, or household members were in danger of domestic violence. The court, therefore, denied Erica's request for a protection order and set aside the temporary ex parte order it had previously granted. Erica now raises the following sole assignment of error for our review:

> The trial court/magistrate erred and/or abused its discretion by denying appellant a five (5) year domestic violence civil protection order after full hearing.

## II. Law and Analysis

{¶14} For the purpose of granting a protection order, domestic violence is defined as the "occurrence of one or more of the following acts against a family or household member":

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

R.C. 3113.31(A)(1).

{¶15} R.C. 3113.31(E)(8) provides that a court "may modify or terminate" a protection order entered after a full hearing if the moving party shows, by a preponderance of the evidence, that termination or modification of the protection order is justified

because (1) the protection order is "no longer needed" or (2) "the terms of the original protection order * * * are no longer appropriate." In considering whether to modify or terminate a protection order or consent agreement, R.C. 3113.31(E)(8)(c) directs the court to consider all relevant factors, including, but not limited to, the following:

(i) Whether the petitioner consents to modification or termination of the protection order or consent agreement;

(ii) Whether the petitioner fears the respondent;

(iii) The current nature of the relationship between the petitioner and the respondent;

(iv) The circumstances of the petitioner and respondent, including the relative proximity of the petitioner's and respondent's workplaces and residences and whether the petitioner and respondent have minor children together;

(v) Whether the respondent has complied with the terms and conditions of the original protection order or consent agreement;

(vi) Whether the respondent has a continuing involvement with illegal drugs or alcohol;

(vii) Whether the respondent has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for an offense of violence since the issuance of the protection order or approval of the consent agreement;

(viii) Whether any other protection orders, consent agreements, restraining

orders, or no contact orders have been issued against the respondent pursuant to this section, section 2919.26 of the Revised Code, any other provision of state law, or the law of any other state;

(ix) Whether the respondent has participated in any domestic violence treatment, intervention program, or other counseling addressing domestic violence and whether the respondent has completed the treatment, program, or counseling;

(x) The time that has elapsed since the protection order was issued or since the consent agreement was approved;

(xi) The age and health of the respondent;

(xii) When the last incident of abuse, threat of harm, or commission of a sexually oriented offense occurred or other relevant information concerning the safety and protection of the petitioner or other protected parties.

**{¶16}** Our standard of review of determinations regarding civil protection orders depends on the nature of the challenge. *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 11, citing *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453, ¶ 9 (8th Dist.). R.C. 3113.31 expressly authorizes trial courts to "'craft protection orders that are tailored to the particular circumstances,'" and therefore, challenges to the scope of a protection order are reviewed for abuse of discretion. *Allan* at *id.*, quoting *Reynolds v. White*, 8th Dist. Cuyahoga No. 74506, 1999 Ohio App. LEXIS 4454, *10-11 (Sept. 23, 1999). When the issue is whether a protection order should have issued at all, however, the question on review is whether there was

"sufficient credible evidence" to support a finding that the respondent had engaged in acts or threats of domestic violence. *Allan* at ¶ 12.

**{¶17}** The issue presented in this appeal is whether the court should have extended the protection order and we, therefore, review to determine whether there was sufficient credible evidence to support the court's finding that Erica did not prove by a preponderance of the evidence that Antonio committed an act or acts of domestic violence, or that she, her family, or household members were in danger of domestic violence.

**{¶18}** Weight of the evidence concerns the "'inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In assessing whether a finding is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

**{¶19}** Although we consider the witnesses' credibility, we are guided by a presumption that the trier-of-fact findings are correct because it has had an opportunity to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Thus, judgments

supported by competent, credible evidence going to all the essential elements of the claim will not be reversed on appeal as being against the manifest weight of the evidence.

{¶20} After careful review, we find that the trial court's judgment denying Erica's petition for a protective order was supported by competent, credible evidence going to all the essential elements of her claim that she needed an order because she was in fear of imminent serious physical harm by Antonio. The trial court's finding that the March 2014 incident did not constitute domestic violence because it found that Erica was not placed in fear of imminent serious physical harm is supported by the facts.

{¶21} By Erica's own testimony, after Antonio assaulted her and left the home, she ran out of the house after him, trying to retrieve her cell phone. Further, Erica was inconsistent about how Antonio stopped assaulting her: at the ex parte hearing she testified that their youngest child had to bite Antonio to get him off of her, but at the full hearing, she testified that she bit Antonio to stop the attack.

{¶22} Moreover, Erica testified that since the ex parte order was granted in May 2014, there have not been any instances of violence between her and Antonio. When questioned as to why she wanted the order to remain in effect, Erica testified that "I would come home and my door would be open before this protection order. The garage door would be unlocked. Air conditioning — the temperature is on and the air conditioning changed." That response was not indicative of a person in fear of imminent serious physical harm.

{¶23} Erica also testified that since the order was first granted, her only interaction

with Antonio was relative to their children, and their exchanges were always in public. She testified that she is not afraid of Antonio in public settings, but is afraid of him in private settings. But she admitted that since the order was put in place, Antonio does not come to her house anymore.

{¶24} We defer, as we should, to the trial court's determinations regarding the parties' credibility because the traditional fact-finding role of the trial court is based on its ability to observe the demeanor, gestures, and voice inflections of witnesses who testify. *Seasons Coal Co.*, 10 Ohio St.3d at 80, 461 N.E.2d 1273.

{¶25} In giving deference to the court's credibility determinations, we consider the court's determination made here vis-a-vis its determination in the divorce proceeding. As in this case, the trial court found credibility lapses in the divorce proceeding. Specifically relative to Erica's allegations of other instances of domestic violence, the court noted that Erica never informed the court about them during the numerous pretrials it held. It was not until Erica was testifying in the divorce trial that she brought up other alleged acts of domestic violence, which prompted the court to continue the divorce proceedings for further investigation. The court was dismayed that Erica's "serious allegation" made at that late stage of the proceeding "essentially robbed the Court of the ability to manage this issue from the beginning using established protocols along the way."[3]

---

[3]The court also noted that Erica's allegation of other instances of domestic violence only came after (1) the guardian ad litem's report which disfavored Erica's request to relocate out of the Cleveland area, and favored shared parenting and (2) the attendance at trial of Antonio's parents and Antonio's friend (who was a sitting Cuyahoga County Common Pleas, General Division judge), whose presence the court noted "added much fuel to the fire in this case."

**{¶26}** In light of the above, the trial court's judgment denying Erica's petition for a protective order was supported by competent, credible evidence going to all the essential elements of her claim, and her sole assignment of error is overruled.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant petitioner costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Domestic Relations Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR