[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Tynes,* **Slip Opinion No. 2016-Ohio-3307.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3307

IN RE APPLICATION OF TYNES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Tynes,* Slip Opinion No. 2016-Ohio-3307.]**

*Attorneys—Character and fitness—Applicant was convicted of felony offenses for attempting to persuade a minor to engage in sex and for possession of child pornography—Application denied—Applicant may reapply to take the July 2018 or a later bar exam.*

(No. 2015-0543—Submitted October 13, 2015—Decided June 9, 2016.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 576.

_____

**Per Curiam.**

{¶ 1} Applicant, John David Tynes, is a candidate for admission to the practice of law in Ohio. After investigating Tynes's character, fitness, and moral qualifications to practice law, the admissions committee of the Cincinnati Bar Association recommended that his application be disapproved. Tynes appealed that

recommendation to the Board of Commissioners on Character and Fitness pursuant to Gov.Bar R. I(12)(A).

{¶ 2} A panel of the board conducted a hearing and issued a report finding that Tynes was convicted in 1998 by a court-martial for multiple felony offenses arising from his attempts to persuade girls under the age of 15 to engage in sex acts and that that conduct rendered him unfit for admission to the practice of law in Ohio. The panel therefore unanimously recommended that his application be disapproved and that he be prohibited from applying for admission to the bar in the future. The board adopted the panel's report in its entirety.

{¶ 3} Tynes objects to the board's recommendation that his application be disapproved and that he be forever barred from reapplying for admission to the bar, arguing that the board focused too heavily on his past felony convictions and the effect that his admission would have on the public's perception of the legal profession. He contends that despite his past mistakes, he has presented clear and convincing evidence of his rehabilitation and that his application should be approved or that in the alternative, he should be permitted to reapply.

{¶ 4} For the reasons that follow, we disapprove Tynes's application but will permit him to apply to take the July 2018 or a later bar examination.

**Findings of Fact**

{¶ 5} In 1998, when he was approximately 50 years old and serving in the military, Tynes began frequenting sexually oriented chat rooms on the Internet. In those chat rooms, he introduced himself to at least four females whom he believed to be under the age of 15. He later communicated with them privately through e-mail and instant messaging. He sent them sexually explicit photographs of himself. He also requested and received similar pictures from the girls.

{¶ 6} On three separate occasions, Tynes sought to arrange in-person meetings with the young girls he had befriended online. He sent numerous e-mail messages to a 13-year-old girl in Louisville, Kentucky, telling her that he wanted

to meet her and that he "desperately wanted to make love" to her. He also called her on the telephone, but the girl discouraged Tynes from going to Louisville by telling him that her parents had grounded her.

{¶ 7} A second incident occurred while Tynes was returning home to Virginia from temporary military duty in Texas. He travelled 300 miles out of his way to meet another female whom he believed to be a minor. After renting a motel room, he e-mailed the girl and tried to convince her to sneak out of her home so that they could engage in sex. After considerable discussion, the girl declined to meet him.

{¶ 8} Three months later, Tynes was scheduled to fly from Virginia to Las Vegas on official military business. He arranged a layover in Chicago, where he rented a hotel room with the intent to engage in sexual activities with a female whom he believed to be a minor and to make a video recording of the encounter. He telephoned the girl and arranged to meet her outside his hotel, but when he appeared for that meeting, he was arrested by agents from the Federal Bureau of Investigation. He fully cooperated with the FBI and informed agents that he had pornographic images of children under the age of 18 in his home. The FBI found those images on his computer hard drive and on many computer discs, following a search of his home.

{¶ 9} Tynes was charged under the Uniform Code of Military Justice with four counts of conduct unbecoming an officer, four counts of attempting to persuade a minor to engage in sex, two counts of traveling interstate with the intent to have sex with a minor, one count of knowingly possessing child pornography, and one count of knowingly receiving child pornography. He was convicted of the charges in a court-martial proceeding and sentenced to 30 months of confinement in the United States Disciplinary Barracks. He served 19 months of that sentence.

{¶ 10} Tynes described these events as the most devastating thing that had ever happened to him. At the time he engaged in his criminal conduct, he was

married with four children living at home—including three daughters. He stated that there was significant family strife because his children had behavioral problems and he often had to play the role of the "heavy." He became isolated from his wife and apparently viewed the Internet and his illicit conduct as an escape from his everyday life. The board found that Tynes took full responsibility for his actions, but it noted that he attempted to minimize the scope of his conduct at the beginning of the hearing and that many of the details were only brought out during questioning by the panel members.

{¶ 11} Tynes testified that he struggled following his release from incarceration. Though his wife stood by him and they remain married, they moved several times, due in part to unwanted attention related to his criminal offenses. He was required to register as a sex offender in the various states in which he resided after his release from incarceration, but in November 2011, he received confirmation that his Ohio sex-offender-registration requirements had expired.

{¶ 12} Tynes applied to more than 20 law schools, but Northern Kentucky University's Salmon P. Chase College of Law was the only one to accept him. He fully disclosed his convictions and incarceration on his law-school applications and has not been charged with any other offenses since his release. When questioned by the panel members, he admitted that he entered a sexually oriented online chat room for adults more than ten years ago, but he emphasized that this isolated incident did not involve minors.

{¶ 13} The Cincinnati Bar Association admissions committee referred Tynes to the Ohio Lawyers Assistance Program ("OLAP") for a psychological evaluation based on concerns that he had not received any type of counseling or therapy following his release from confinement. Dr. Jeffrey L. Smalldon, a forensic psychologist, conducted the psychological evaluation in the spring of 2013 and concluded that there were no mental-health reasons that would prevent Tynes from engaging in the responsible practice of law. Although Smalldon characterized

Tynes as "someone who marches to his own drummer," he also stated that he is not a habitual rule violator and concluded that his admission to the practice of law would not jeopardize the public in any way.

{¶ 14} Tynes entered into a five-year OLAP mental-health recovery contract in September 2013 and, pursuant to that contract, commenced regular psychotherapy sessions with a licensed independent social worker that November. His therapist testified that he has no meaningful concerns about Tynes's ability to function as an attorney and that he does not believe that there is a significant risk of recidivism, because Tynes is much healthier from an emotional standpoint than he was when he committed his offenses in 1998.

### Board Recommendation, Objections, and Disposition

{¶ 15} An applicant to the Ohio bar must prove by clear and convincing evidence that the applicant "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.* Gov.Bar R. I(11)(D)(3) also provides a nonexhaustive list of factors to be considered in assessing an applicant's character and fitness for admission to the bar. The most relevant of those factors here is Tynes's convictions for multiple felony offenses, which necessitates the consideration of several additional factors, including how the applicant's approval would affect the public's perception of, or confidence in, the legal profession. *See* Gov.Bar R. I(11)(D)(5)(a)(i)-(iv).

{¶ 16} In evaluating an applicant's character, the board is also directed to consider ten essential eligibility requirements for the practice of law, including the ability to exercise good judgment in conducting one's professional business; the ability to avoid acts that exhibit disregard for the health, safety, and welfare of

others; and the ability to conduct oneself professionally and in a manner that engenders respect for the law and the profession. *See* Supreme Court of Ohio, *Definitions of Essential Eligibility Requirements for the Practice of Law*, Requirement Nos. 3, 6, and 10, http://www.supremecourt.ohio.gov/ AttySvcs/admissions/pdf/ESSENTIAL_ELIGIBILITY_REQUIREMENTS.pdf (accessed Mar. 2, 2016).

{¶ 17} Here, the board found that Tynes's commission of multiple felony offenses established a disregard for the law and a complete disregard for the health, safety, and welfare of the vulnerable young girls from whom he solicited sexual favors. Noting that attorneys hold a position of trust and come in contact with vulnerable people on a daily basis, the board determined that allowing a convicted sex offender to hold this position of trust would clearly undermine the public's perception of and confidence in the legal profession. Therefore, the board recommended that we deny Tynes's application and not permit him to reapply as a candidate for the Ohio bar exam.

{¶ 18} Tynes objects to the board's recommendation that we deny his pending registration application and prohibit him from reapplying as a candidate for admission to the Ohio bar. He argues that his felony convictions occurred more than 17 years ago, that he has been punished for his offenses, and that his conduct since his release shows that he is rehabilitated. Moreover, he argues that we typically impose indefinite suspensions rather than permanent disbarment on attorneys who have engaged in similar misconduct. Therefore, he urges us to approve his current application or, in the alternative, permit him to reapply in the future.

{¶ 19} We acknowledge that Tynes has been a productive and law-abiding citizen since his release from confinement, and we commend his desire to help others navigate the criminal justice system. Nonetheless, we have significant concerns regarding his honesty and integrity during the admissions process given

6

his efforts to minimize his own culpability for his criminal conduct—first claiming that he never had any intention of driving to Louisville to meet the first young girl he befriended online and then suggesting that the second girl was a civilian vigilante. We also note that although a course of mental-health treatment was recommended at the time of his conviction in 1998, Tynes did not pursue that treatment in earnest until November 2013—and then only in response to the recommendations of the admissions committee and Dr. Smalldon.

{¶ 20} In light of these facts, we find that Tynes has failed to carry his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. We therefore overrule his first objection to the board's report and adopt the board's findings and recommendation that his pending application be disapproved. Our concerns, however, are not so grave as to warrant a permanent bar to a future application.

{¶ 21} We have previously disapproved the application of an applicant with a felony conviction for pandering obscenity involving a minor, but noting the potential for rehabilitation, we ruled that he could reapply upon the termination of his legal obligation to register as a sex offender. *In re Application of Daubenmire*, 137 Ohio St.3d 435, 2013-Ohio-4977, 999 N.E.2d 669, ¶ 1, 3. And we have acknowledged that the indefinite suspension of an attorney who has committed sex crimes not only protects the public, deters other lawyers from similar wrongdoing, and preserves the public's trust in the legal profession but also "leaves open the possibility that the errant attorney may one day be rehabilitated, redeemed, and able to resume the competent, ethical, and professional practice of law." *Disciplinary Counsel v. Grossman*, 143 Ohio St.3d 302, 2015-Ohio-2340, 37 N.E.3d 155, ¶ 12 (indefinitely suspending an attorney who pleaded guilty to one count of receiving visual depictions of child pornography after he was caught in a law-enforcement operation in which he had discussed various sex acts involving a fictitious 11-year-old girl and had gone to a prearranged location expecting to meet the girl); *accord*

*Disciplinary Counsel v. Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, ¶ 2 (indefinitely suspending an attorney following his two felony convictions for attempting to engage in sexual conduct with an underage victim).

{¶ 22} We have likewise recognized the potential for rehabilitation in at least one case involving an attorney who actually engaged in sexual conduct with a minor. *See Disciplinary Counsel v. Pansiera*, 77 Ohio St.3d 436, 437-438, 674 N.E.2d 1373 (1997) (indefinitely suspending an attorney who pleaded guilty to seven counts of corrupting a minor for engaging in sexual conduct with a child between the ages of 13 and 16).

{¶ 23} Based on the evidence of Tynes's good conduct since his release from military confinement in May of 2001, his ongoing mental-health treatment, and his continuing participation in OLAP, we believe that he may soon be able to carry his burden of proving that he possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. Therefore, we sustain his second objection to the board's report and will permit him to reapply for the Ohio bar exam.

{¶ 24} Accordingly, we disapprove Tynes's application at this time. Tynes may reapply for admission to the practice of law in Ohio by filing an application to take the July 2018 or a later bar examination and establishing that he possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents and would not permit the applicant to reapply for admission to the practice of law in Ohio.

_____

Montgomery, Rennie, and Jonson, L.P.A., and George D. Jonson, for applicant.

Paul W. McCartney, for the Cincinnati Bar Association.

_____