[Cite as *Martindale v. Martindale*, 2017-Ohio-9266.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

LISA A. MARTINDALE,　　　　　　:

　　　　　　　　　　　　　　　　:　　Case No.  17CA5

　　Petitioner-Appellee,　　　　:

　　　　　　　　　　　　　　　　:

　　vs.　　　　　　　　　　　　:　　DECISION AND JUDGMENT
　　　　　　　　　　　　　　　　:　　ENTRY

ERIC J. MARTINDALE,　　　　　　:

　　　　　　　　　　　　　　　　:

　　Respondent-Appellant.　　　:　　**Released: 12/14/17**
_____

APPEARANCES:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

Sierra Meek, Nolan & Meek Co., LPA, Nelsonville, Ohio, and Micaela C. Deming, Bluffton, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Eric Martindale commenced an appeal of the January 4, 2017 judgment of the Athens County Court of Common Pleas, subsequent to a Domestic Violence Civil Protection Order Full Hearing.  Appellant contends the trial court erred in granting the full protection order and in naming the children as protected parties.  Upon review, we find the trial court's decision is supported by competent, credible evidence.  Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} Appellant and Appellee were married in 2011. They have four children: A.M., age 6, M.M., age 5, and twins born in July 2014. When the parties were married in 2011, Appellant was an active member of the United States Military. The parties lived together in Ohio, North Carolina, and Pennsylvania. According to the parties' testimony, the relationship between them was violent during most of the marriage. Appellee and the two older children returned to Athens County in November of 2013.

{¶3} On December 20, 2013, Appellee filed a petition for an ex parte domestic violence civil protection order (CPO) in the Athens County Court of Common Pleas.[1] On the same date, Appellee was granted an order of protection and the matter was set for a full hearing on January 6, 2014. The matter was continued to February 20, 2014.

{¶4} On February 20, 2014, prior to the full hearing, Appellant filed a motion to dismiss the domestic violence petition, alleging that he had suffered abuse at Appellee's hands, due to her anger issues and illicit drug usage. Appellant also alleged a lack of jurisdiction. The magistrate took

---

[1] On January 6, 2014, Appellee filed a complaint for a legal separation in the same court. Appellant filed a complaint for divorce in a Pennsylvania court in January 2014. Appellee's complaint for legal separation was eventually dismissed, in a decision stating that the matter should be prosecuted in the State of Pennsylvania. The matter then came before us on appeal in *Martindale v. Martindale,* 4th Dist. Athens No. 14CA30, 2016-Ohio-524, wherein we found merit to the argument that the magistrate failed to consider the statutory factors for determination of whether Ohio is the proper forum.

testimony from both parties regarding the allegations of domestic violence and the jurisdictional issue.

{¶5} On February 26, 2014, the Magistrate's Order found that Appellant had sufficient minimum contacts with the State of Ohio to satisfy the jurisdictional requirements. The full hearing on the civil protection order was scheduled for April 28, 2014.[2] However, the full hearing actually resumed on May 30, 2014.

{¶6} At that hearing, Appellee presented testimony from Nancy Grigsby, a director employed by the Ohio Domestic Violence Network, and Donna Pierce, Deputy Chief Probation Officer of the Dayton Municipal Court. On July 17, 2014, the magistrate issued a decision that all child-related matters should be addressed in the Pennsylvania proceedings. The parties' children were also ordered removed as "protected persons" from the current proceedings.[3]

{¶7} On August 7, 2014, the trial court requested the Common Pleas Court for the County of Montgomery, Pennsylvania, Family Court Division, to release the sealed transcript and/or recording of the in-camera interview of testimony given by G.M., Appellant's older daughter by a prior marriage.

---

[2] During these proceedings, both parties have filed numerous motions concerning issues such as changes in the visitation schedule, supervised visitation, requests for records, protective orders, disqualification of Appellant's attorney, clarification and contempt. Due to death and withdrawal, the parties have also been represented by various counsel.

[3] The parties' younger children, the twins, were not made part of the proceedings.

Her testimony was given in April 2014 in the Pennsylvania proceedings. The trial court requested G.M.'s testimony for consideration in the upcoming full hearing on the CPO, scheduled for August 25, 2014.

{¶8} At the full hearing, Appellee again testified and also presented testimony from Ariah Ripley, Appellant's prior spouse and mother of G.M. Appellant also testified. On October 31, 2014, the Magistrate issued Findings of Fact and Conclusions of Law: Magistrate's Order Denying Petition for Domestic Violence Civil Protection Order. The pertinent findings are as follows:

> "4. Both parties presented evidence of physical injuries that he/she has sustained at the hands of the other party. Both parties testified that the last incident of physical violence between the parties occurred on July 6, 2013.
>     * * *
> 6. Neither party presented testimony from any third-party who had witnessed any incidence of physical violence by either of the parties.
>     * * *
> 10. During the pendency of this matter, Respondent has had limited, supervised visitation with A.M. and M.M. * * * No evidence was presented that Petitioner's parents ever noticed any injuries to the children upon retrieving them from Respondent after visitation."

{¶9} The magistrate denied the Petition and ordered the Ex Parte CPO terminated, finding Appellee had failed to show by a preponderance of the evidence that she or children were in imminent danger of domestic violence. The magistrate made the following conclusions of law:

"Even without concerning the question of the remoteness of the
events and whether they are even proximate enough in time to
engender current rear, the Magistrate finds Petitioner's
testimony not credible.
    * **
There's no credible evidence that Respondent attempted to
cause or recklessly caused bodily injury to either of the
children. Further, there's no credible evidence of any threats
Respondent made that would place the children or Petitioner in
fear of imminent serious physical harm to either of the
children."

{¶10} Of significance, on February 15, 2015, Appellee filed Notice of

Preferred Charges against Appellant. On June 1, 2015, Appellee filed

supplemental objections to the magistrate's order denying the CPO. On

June 19, 2015, counsel for Appellant filed his response to the objections. On

July 2, 2015, Appellee next filed a Notice of General Court Martial Hearing,

which stated that military prosecutors had contacted her to inform her that

after a months-long investigation, the military was proceeding with charges

against Appellant on four counts of assault.

{¶11} On December 20, 2015, the trial court issued its Ruling on

Objections and Entry. The trial court adopted the magistrate's decision

denying the full CPO and dismissing the Ex Parte CPO.

{¶12} On January 21, 2016, Appellee filed a Motion for New Trial,

pursuant to Civil R. 59(A)(8), based on newly discovered evidence.

Appellee argued that on December 7, 2015, Appellant had appeared at a

court martial and had submitted written stipulations of fact in which he admitted to domestic violence against Appellee while the children were in the home. On March 17, 2016, Appellant filed a Memorandum Contra the Motion for New Trial. On June 7, 2016, the trial court granted the motion for new trial, in part, to hear any new evidence as to the underlying proceedings. A hearing was set for November 2, 2016.

{¶13} At the November 2, 2016 hearing, Appellee presented testimony from Phillip Stackhouse, Major Spicer, and Appellant as on cross-examination. The trial court subsequently granted a CPO which covered Appellee and the parties' two older children. The CPO expires in December 2018. The Court found as follows:

> "Respondent admitted to striking Petitioner, see Petitioner's Exhibit A, causing her a black eye. * * * Respondent is permitted visitation with parties' children as established by any other court order having jurisdiction."

{¶14} This timely appeal followed. Where pertinent, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

> "I. THE TRIAL COURT ERRED IN GRANTING THE DOMESTIC VIOLENCE PROTECTION ORDER.
>
> II. THE TRIAL COURT ERRED BY NAMING THE CHILDREN AS PROTECTED PARTIES IN THE PROTECTION ORDER."

## A.  STANDARD OF REVIEW

**{¶15}** "Our standard of review upon a challenge to a CPO depends upon the nature of the challenge to the CPO." *Wootten v. Culp,* 2017-Ohio-665, 85 N.E.3d 198, ¶ 18 (4th Dist.), quoting *Walters v. Walters,* 150 Ohio App.3d 287, 2002-Ohio-6455, 780 N.E.2d 1032, ¶ 9 (4th Dist.), citing *Gooderham v. Patterson,* 4th Dist. Gallia No. 99CA01, 1999 WL 1034472 (Nov. 9, 1999); *see also Corrao v. Corrao,* 8th Dist. Cuyahoga No. 103411, 2016-Ohio-4862, ¶ 16 ("Our standard of review depends on the nature of the challenge").  When the issue is whether a CPO should have been issued at all, we must determine whether the trial court's finding that the petitioner has shown by the preponderance of the evidence that the petitioner or petitioner's family or household members are in danger of the domestic violence is against the manifest weight of the evidence. *Wootten, supra,* at 18. *See, e.g., Lewis v. Gravely,* 4th Dist. Adams No. 14CA990, 2016-Ohio-1502, 2016 WL 1404159, ¶ 23.

**{¶16}** When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that

the judgment must be reversed. *Wootten, supra,* at 19. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-20; *Lewis, supra,* at ¶ 23 (applying this standard of review in a CPO case).

**{¶17}** Moreover, when reviewing the evidence under this standard, we are aware that the weight and credibility of the evidence are to be determined by the trier of fact; we thus defer to the trier of fact on these issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Wootten, supra,* at 20. *See State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. Reyes–Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17.  The trier of fact is free is believe all, part, or none of any witness's testimony. *Id.* citing *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

**{¶18}** Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the decision. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 330; *Lewis,* 2016-Ohio-1502, at ¶ 23.

B.  LEGAL ANALYSIS

1.  <u>Petitioner-Appellee as a protected party.</u>

{¶19} R.C. 3113.31(A) provides:

"(1) Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *.

{¶20} R.C. 3113.31 (E) further provides:

"(1) After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members."

{¶21} In his brief, Appellant discusses at length the December 30, 2015 magistrate's decision which denied Appellee's request for a civil protection order. The December 30, 2015 decision placed emphasis on the remoteness of the alleged events, the absence of Appellee's fear, and the idea that Appellee was using the CPO proceedings in order to obtain leverage in the parties' Pennsylvania court proceedings. Appellant also emphasizes the trial court's finding that there was no immediate and present danger of domestic violence to Appellee and the children. Appellant argues the evidence presented at the new trial did not directly affect the magistrate's findings. Upon review of the record, however, we disagree.

{¶22} We first observe that Appellant's failure to request findings of fact and conclusions of law limits our review in this case. Civ.R. 52 states:

"When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."

**{¶23}** The purpose of Civ.R. 52 findings of fact and conclusions of law is " 'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.' " *See Harper v. Neal,* 4th Dist. Hocking No. 2016-Ohio-7179, quoting *In re Adoption of Gibson,* 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986), quoting *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). Thus, a party may file a Civ.R. 52 request in order "to ensure the fullest possible review." *Cherry v. Cherry,* 66 Ohio St.3d 348, 356, 421 N.E.2d 1293 (1981).

**{¶24}** In the absence of findings of fact and conclusions of law, we presume that the trial court applied the law correctly and will affirm its judgment if evidence in the record supports it. *Harper, supra,* at ¶ 19; *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007–Ohio–2019, ¶ 10, citing *Allstate Fin. Corp. v. Westfield Serv. Mgt. Co.,* 62 Ohio App.3d 657, 577 N.E.2d 383 (12th Dist.1989); *accord Leikin Oldsmobile, Inc. v. Spofford Auto Sales*, 11th Dist. Lake No. 2000–L–202, 2002–Ohio–2441, ¶ 17 ("It is difficult, if not impossible, to determine the basis of the trial court's ruling without findings of fact and conclusions of law * * *."); *Yocum v.. Means,*

2nd Dist. Darke No. 1576, 2002–Ohio–3803, ¶ 7 ("The lack of findings obviously circumscribes our review * * *."). As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

**{¶25}** "[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence. The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain." *Harper, supra,* at 19.

**{¶26}** Here, Appellant's failure to request findings of fact and conclusions of law means that we presume the court correctly applied the law and will affirm the trial court's judgment so long as some evidence supports it. After our review of the record in its entirety, we believe that the

record contains some competent, credible evidence, if believed, to support the trial court's judgment.

{¶27} The November 2, 2016 hearing was for the purpose of introducing new evidence that Appellant had entered into a written stipulation of fact to resolve a court martial proceeding and receive non-judicial punishment. This evidence was relevant evidence not available to Appellee at the time of the August 25, 2014 full hearing. Appellee asserted that the written stipulation, entered into evidence as Joint Exhibit A, was evidence that Appellant did in fact strike his wife in the July 6, 2013 incident. Regarding the July 6, 2013 incident, the pertinent language of Joint Exhibit A stated:

> "* * * [T]he events escalated into a physical confrontation and I struck her one occasion. As a result of this altercation my wife developed a black eye. Our children were in the house at the time of the incident."

{¶28} Appellee presented evidence from 3 witnesses: Major Katherine Spicer, a military prosecutor; Phillip Stackhouse, a retired expert on military processes and proceedings; and Appellant, as on cross-examination. The new trial focused on two issues: (1) whether or not Appellant misrepresented the events of the July 6, 2013 incident of violence between the parties; and, (2) whether or not Appellant misrepresented his prior martial arts training.

{¶29} Major Spicer, a litigation associate working in the Marine Corps Reserves, testified that she prosecuted the Martindale case. Major Spicer testified Appellant was initially charged with two charges: assault and conduct unbecoming an officer. In 2015, a hearing officer found probable cause on the charges, but not enough objective evidence to support a conviction. Therefore, it was recommended that the case not be referred to a general court martial.

{¶30} However, Major Spicer personally investigated the matter further. Appellee turned over her entire phone to the Naval Criminal Investigative Service (NCIS) to perform a forensic analysis on Appellee's phone. Pictures on the phone corroborated Appellee's version of the events that took place on July 6, 2013. Major Spicer also reviewed Appellant's NCIS interrogation. She testified Appellant did not deny hitting Appellee, but indicated he claimed "self-defense."

{¶31} Importantly, Major Spicer also noted that during the NCIS interrogation, Appellant informed that he took a week off work due to his injuries and that his commanding officer saw his black eye. Based on this information, Major Spicer also interviewed the commanding officer and executive officer. During her investigation, she was unable to corroborate

that Appellant had missed any work related to the July 2013 incident or that he ever suffered a black eye.

{¶32} Major Spicer testified that Appellant also submitted photographs to verify his own injuries. However, upon analysis, these photographs were unable to corroborate his version of the facts of the July 2013 incident. Major Spicer also testified she was never under any pressure to bring charges against Appellant.

{¶33} Phillip Stackhouse, a retired military lawyer, testified as an expert in the area of military legal procedure and non-judicial punishment. He was not involved in Appellant's court martial proceedings. However, he testified he did review Joint Exhibit A. He testified he interpreted the word "struck" as meaning "slap" or "punch." He also testified the Marine Corps Martial Arts program is "very serious." He testified it is a violent program, teaching striking, choking, and weapon usage.

{¶34} On direct examination, Appellant reaffirmed his testimony that he never hit, struck, or punched his wife, and that he just "shoved her face away." Appellant testified that Joint Exhibit A contained the word "strike" in it because the Navy "wanted it included." The Navy also required his black belt experience to be contained in Joint Exhibit A. Appellant testified composing the document was a "back and forth" process he participated in

remotely from his hotel room.  He kept refusing to sign the stipulation with

"strike" in it.  He explained the attorneys convinced him as follows:

> "[I]f I was shoving my wife's face away from me when she had
> bit me could be constituted as a strike.  I felt like it was
> something I could reconcile and sign.  Uh, looking at this now I
> regret it. * * * This is what the Navy insisted on.  They insisted
> on that wording as I understand it."

{¶35} Appellant also testified that he did not deliberately omit the

information that he had a black belt in martial arts during his August 2014

testimony.  He explained the omission as wanting to "make sure he was

answering the questions directly," and he wanted to give his most significant

experience.  He could not recite the actual requirements.

{¶36} Appellant also testified there may have been improper influence

from a Congressman who contacted Appellant's command, which caused

the charges to be filed.  He did not claim unlawful command influence

because he was not sure to whom he would make the claim, and he was

unsure of the success of such a claim.

{¶37} On cross-examination, Appellant reiterated previous testimony

that he had never hit his wife.  Then, Appellant was asked to read from Joint

Exhibit A, which stated as previously set forth above, that he "struck her on

one occasion, * * * as a result [she] developed a black eye."  Appellant also

identified his signature and his counsel's signature on the document.

{¶38} Appellant was then asked to review Exhibit 2 entitled "Response to report of Non-judicial Punishment," which set forth as follows: "It was then that I struck my wife with an open hand as I tried to push her away from me." He confirmed either he or his counsel wrote the sentence. Appellant confirmed he was found guilty of disorderly conduct for engaging in an altercation with his spouse.

{¶39} Appellant denied initiating a plea deal on the morning of the court martial. He admitted he accepted responsibility for "his involvement" in the incident on July 6, 2013. According to his testimony, the Navy required him to take responsibility for his actions on July 6, 2013 "as they understood them."

{¶40} On cross-examination, Appellant testified in the Marines he had received hand to hand combat training. Appellant admitted he had a black belt despite testifying three times in August 2014 that he had "a little bit" of martial arts training. He had not practiced martial arts since 2012.

{¶41} Based on the foregoing testimony, we find the evidence adequately supports the trial court's decision to grant the full CPO. While the full CPO issued January 4, 2017 contains only brief findings of the court, we note that the December 15, 2015 entry denying the full CPO demonstrates the trial court's familiarity with the case. In the December

2015 entry, the trial court stated that it had made its own independent analysis in its review of the record. The trial court analyzed the parties' testimony at length as to various incidents and the court noted several times that the evidence was conflicting and unable to be corroborated. The trial court stated it had reviewed the exhibits and photographs of both parties of injuries allegedly sustained. The court also commented that it found both parties' credibility to be "strained."

{¶42} Based on our limited review, we can only conclude that having heard the new testimony regarding the July 6, 2013 incident, the trial court found Appellant's credibility to be more than "strained," and possibly found it to be deceptive and untruthful. Even from a cold record, Appellant's testimony appears to be vague and evasive at times. On January 5, 2017, the trial court made only the specific finding that Appellant admitted to striking Appellee and causing her a black eye.

{¶43} Appellant points out nothing in the trial court's January 4, 2017 order speaks to Appellee's lack of fear. Appellant also points out that the issuance of a civil protection order cannot be based solely on previous incidents of alleged domestic violence. Appellant emphasizes there is no evidence of a reasonable, ongoing imminent fear of domestic violence.

**{¶44}** Appellant has directed us to *M.J. v. L. P*., 9th Dist. Medina No. 15CA0036-M, 2016-Ohio-7080, wherein the appellate court observed when reviewing whether there is sufficient evidence that a petitioner is under fear of imminent serious physical harm, "the critical inquiry is 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm." *Id.* at 11, quoting *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11, quoting *State v. Tackett,* 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 14. Although "we refer to the petitioner's history with respondent" when carrying out this inquiry, *M.H. v. J.H.,* 9th Dist. Medina No. 15CA0031-M, 2015-Ohio-5178, ¶ 7, to support the extension of a civil protection order, "[t]here must also be evidence the petitioner has a reasonable belief of serious physical harm based on new threats of domestic violence." *Studer v. Studer,* 3rd Dist. Crawford No. 3–11–04, 2012-Ohio-2838, ¶ 23; *see also Woolum v. Woolum*, 131 Ohio App.3d 818, 822 (12th Dist.1999) (affirming extension of civil protection order "on the basis of past domestic abuse coupled with present threat of future violence") (Emphasis added.). This requirement of continued threats beyond those that gave rise to the initial civil protection order is necessary because "[t]he purpose of the civil

protection order is not to address past abuse." *Wetterman v. B.C.,* 9th Dist.

Medina No. 12CA0021–M, 2013-Ohio-57, ¶ 11.

{¶45} While it is true that in the December 2015 entry the trial court

specifically found "no indication that Petitioner is fearful of serious

imminent physical harm," given the limited review to which we are

constrained by the lack of findings of fact and conclusions of law, we

presume the trial court applied the law correctly and considered all the

evidence in the record.  While the trial court did not make a specific finding

in the January 2017 CPO addressing the issues of reasonable imminent fear

or the remoteness in time of the events, we further point out the absence of a

request for findings of fact and conclusions of law ordinarily results in a

waiver of the right to challenge the trial court's lack of an explicit finding

concerning an issue. *Cline v. Rogers Farms*, 4th Dist. Pickaway No. 16CA7,

2017-Ohio-1379, 27. *Fultz v. Fultz,* 4th Dist. Pickaway No. 13CA9, 2014-

Ohio-3344, ¶ 51; *Pawlus v. Bartrug,* 109 Ohio App.3d 796, 801, 673 N.E.2d

188 (9th Dist.1996).

{¶46} Again, we presume the trial court's familiarity with the record

and review of the record.  At the February 2014 hearing, Appellee testified

that she was fearful for her life.  Throughout these proceedings, both parties

acknowledged their relationship was a violent one.  And, the various rulings

have hinged on the parties' credibility, with neither party's testimony establishing any strong indication of reliability.  In the December 20, 2015 entry, the court noted as follows:

> "A review of the record reveals that [Appellant] does not dispute that the parties have had a violent past.  He concedes that there has been violence in the past.  Respondent asserts it had been mutual. * * * There is no corroborating information concerning incidents of [Appellant] choking, grabbing, pushing, or striking the [Appellee]."

{¶47} Significantly, in January 2017, the trial court at last had corroborating information before it and a strong indicator of Appellant's lack of credibility, due to his minimization of his actions in the July 6, 2013 incident which formed the basis of the court martial proceedings.  Other courts have observed that minimizing the nature of charges that formed the basis of a court martial and military sentence reveals a tendency to discount one's own conduct and responsibility, ultimately affecting credibility determinations.[4]  The trial court was free to believe all, part, or none of Appellant's testimony. *West, supra,* at 23.  Mindful that the trial court is in the best position to assess demeanor and truthfulness, as Appellant

---

[4] *See Miller v. Ohio Department of Education,* 2nd Dist. Montgomery No. 27359, 2017-Ohio-7197, ¶ 38 (Miller admitted at ODE hearing that he had pled guilty to the charges that formed the basis of the court-martial and his military sentence, but maintained that he was not guilty of the crimes, thus minimizing the seriousness of his convictions and sentence and militating against the idea of true rehabilitation.). *In re Application of Tynes,* 146 Ohio St.3d 243, 2016-Ohio-3307, ¶ 19 (Court had significant concerns regarding Tynes' honesty and integrity during the admissions process, given his efforts to minimize his own culpability for criminal convictions which occurred in 1998 by a court-martial for multiple felony offenses.).

minimized his actions on July 6, 2013, we defer to the trial court's apparent

assessment that his credibility was lacking. *See Wootten, supra,* at 20.

{¶48} Given the parties' violent history, Appellee's testimony that she

was fearful, and the clear evidence that Appellant did strike his wife's face

causing a black eye on July 6, 2013 and resulting in non-judicial punishment

via the United States Military, we do not believe that the trial court's

judgment creates a manifest miscarriage of justice.[5]  The trial court's finding

that Appellee had shown by a preponderance of the evidence that she was in

danger of domestic violence was supported by evidence in the record and

justified issuance of the full CPO.  As such, the first assignment of error has

no merit and is hereby overruled.

2.  The children as protected parties.

{¶49} In the second assignment of error, Appellant argues the scope

of the CPO is too broad.  Appellant argues, notwithstanding the above, there

is no evidence whatsoever to justify the addition of the minor children as

protected parties.  Appellant argues the only allegations relating to the

children were several unexplained bruises that Appellee either did not report

to children's services or did report but no action was taken.  Appellant

---

[5] We observe that during these proceedings, notwithstanding the very full case load on the trial court's docket, both parties filed numerous motions concerning issues such as changes in the visitation schedule, supervised visitation, requests for records, protective orders, disqualification of Appellant's attorney, clarification, and contempt.  Due to death and withdrawal, the parties have also been represented by various counsel.  These factors have also contributed to the fact that the July 2013 incident occurred over 4 years ago at this point.

emphasizes the trial court's December 2015 finding Appellee not to be credible. Appellant points out prior to the third day of testimony at the original civil protection order hearing, the magistrate removed the children from the civil protection order. No evidence was presented as to the children at the new trial.

{¶50} In response, Appellee contends the inclusion of the children was proper because they were both exposed to the domestic violence perpetrated against Appellee. Appellee points out the inconsistency of Appellant's testimony about whether or not the children were present during the July 2013 domestic violence incident. Appellee argues their presence in an unsafe environment was a form of domestic violence.

{¶51} "[W]hen the challenge to the CPO involves the scope of the order, we review the order for an abuse of discretion." *Wootten, supra*, at 30, quoting *Walters v. Walters,* 150 Ohio App.3d 287, 2002-Ohio-6455, 780 N.E.2d 1032, at ¶ 10; *Corrao v. Corrao,* 2016-Ohio-4862, 2016 WL 3632494, at ¶ 16, quoting *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 11, quoting *Reynolds v. White*, 8th Dist. Cuyahoga No. 74506, 1999 WL 754496 (Sept. 23, 1999) ("R.C. 3113.31 expressly authorizes trial courts to ' "craft protection orders that are tailored to the particular circumstances,' " and therefore, challenges to the scope of a

protection order are reviewed for an abuse of discretion"); *Denney v. Sanders*, 1st Dist. Hamilton No. C–150556, 2016-Ohio-5113, ¶ 19 ("As the trial court has discretion over the scope of the civil protection order, we review challenges to the scope of a [protection order] under an abuse of discretion standard").

{¶52} " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *Wootten, supra,* at 31, quoting *State v. Keenan,* 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.  "An abuse of discretion includes a situation in which a trial court did not engage in a 'sound reasoning process'; this review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Felts,* 2016-Ohio-2755, 52 N.E.3d 1223, ¶ 29 (4th Dist.), quoting *Darmond* at ¶ 34.

{¶53} However, "[a]lthough the abuse of discretion standard usually affords maximum [deference] to the lower court, no court retains discretion to adopt an incorrect legal rule or to apply an appropriate rule in an inappropriate manner.  Such a course of conduct would result in an abuse of discretion." *2–J Supply, Inc. v. Garrett & Parker, L.L.C.,* 4th Dist. Highland

No. 13CA29, 2015-Ohio-2757, at ¶ 9. *See Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals,* 2013-Ohio-5610, 5 N.E.3d 694, ¶ 16.

{¶54} While no evidence was presented at the new trial regarding direct violence to the children, Appellee testified numerous times in previous hearings that the children were present and observed the physical altercations between the parties.  While that evidence was conflicting and uncorroborated, Joint Exhibit A demonstrates corroborating evidence that the children were present during the July 6, 2013 incident.  Appellee has directed us to *McBride v. McBride,* 2012-Ohio-2146, 971 N.E.2d 1007 (12th Dist.), where the appellate court found that one child's presence during times when the father was repeatedly beating the brother placed both children in an unsafe environment.  The *McBrid*e court held at ¶ 25:

> "The trial court did not err in issuing a CPO on behalf of E.M.
> in light of our previous holding that 'placing children in an
> environment where there is a substantial risk to their health and
> safety constitutes one form of domestic violence.' *Ferris v.
> Ferris,* 2006-Ohio-878, at ¶ 28."

{¶55} Likewise, we do not find the trial court abused its discretion in adding A.M. and M.M. to the full CPO.  Given that the testimony of both parties throughout these proceedings acknowledged the home environment was violent, along with Appellant's admission that the children were present during the July 6, 2013 incident, the children were placed in substantial risk

to their health and safety.  For the foregoing reasons, we find no merit to

Appellant's second assignment of error and it is hereby overruled.

Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Costs are assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY:  _____
Matthew W. McFarland, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**