[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Tynes,* Slip Opinion No. 2020-Ohio-631.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-631

IN RE APPLICATION OF TYNES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Tynes,* Slip Opinion No. 2020-Ohio-631.]

*Attorneys—Character and fitness—Applications to take bar exam and to register as candidate for admission to practice of law—Past criminal conduct— Lack of candor—Applicant permanently barred from reapplying for admission to practice of law.*

(No. 2019-1097—Submitted October 2, 2019—Decided February 26, 2020.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 740.

_____

**Per Curiam.**

{¶ 1} Applicant, John David Tynes, of New Richmond, Ohio, is a 2013 graduate of Northern Kentucky University's Salmon P. Chase College of Law.  In June 2016, we found that Tynes failed to carry his burden of proving that he possessed the requisite character, fitness, and moral qualifications to practice law

in Ohio. This finding was based on his efforts to minimize his culpability for nearly 18-year-old criminal convictions arising from his attempts to persuade girls under the age of 15 to engage in sex acts and on his delay in seeking mental-health treatment that was recommended at the time of his convictions. We therefore disapproved his application to register as a candidate for admission to the practice of law. Although the Board of Commissioners on Character and Fitness recommended that we prohibit Tynes from seeking admission to the Ohio bar in the future, we authorized him to apply for the July 2018 bar exam or a later bar exam. *In re Application of Tynes*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.3d 1237, ¶ 19-20, 24.

{¶ 2} Tynes submitted a new registration application in January 2018 and later applied to take the February 2019 bar exam.

{¶ 3} Two members of the Cincinnati Bar Association Admissions Committee interviewed Tynes in November 2018 and recommended that his application be disapproved. At Tynes's request, a seven-member investigatory subcommittee conducted a second interview, and the admissions committee subsequently recommended that his application be approved. However, the board invoked its authority to investigate his character, fitness, and moral qualifications sua sponte. *See* Gov.Bar R. I(10)(B)(2)(e).

{¶ 4} After a hearing, the board issued a report finding that Tynes had done little to alleviate the concerns that we raised more than three years ago and that the mere passage of time cannot cure those deficiencies. Therefore, the board recommends that Tynes's pending applications be disapproved and that he be permanently denied the privilege of reapplying for admission to the practice of law in Ohio. No objections have been filed.

{¶ 5} For the reasons that follow, we agree that Tynes has failed to carry his burden of proving that he possesses the requisite character, fitness, and moral

qualifications to practice law in Ohio, disapprove his pending applications, and forever bar him from reapplying for the privilege to practice law in Ohio.

**Findings and Analysis**

{¶ 6} As we have previously found, Tynes was approximately 50 years old and serving in the military in 1998 when he began frequenting sexually oriented chat rooms on the Internet. In those chat rooms, he introduced himself to at least four females whom he believed to be under the age of 15. He later communicated with them privately through e-mail and instant messaging and eventually sought to meet three of them in person. *Tynes*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.3d 1237, at ¶ 5-6.

{¶ 7} In Tynes's first attempt to arrange an in-person meeting, he told a 13-year-old girl from Kentucky that he wanted to meet her and that he "desperately wanted to make love" to her. *Id.* at ¶ 6. But she discouraged Tynes from traveling to meet her by telling him that her parents had grounded her.

{¶ 8} In his second attempt, Tynes was going home from a temporary military assignment when he traveled 300 miles out of his way, rented a hotel room, and e-mailed another girl to encourage her to sneak out of her home to have sex with him. After considerable discussion, the girl declined to meet him.

{¶ 9} Several months later, Tynes attempted to meet a third girl as he traveled from Virginia to Las Vegas on business. He scheduled a layover in Chicago and rented a hotel room with the intent to make a video recording of their sexual activities. He telephoned her and arranged to meet her outside his hotel, but he was arrested by agents from the Federal Bureau of Investigation when he arrived. *Tynes*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.3d 1237, at ¶ 8.

{¶ 10} Tynes was charged under the Uniform Code of Military Justice with four counts of conduct unbecoming an officer, four counts of attempting to persuade a minor to engage in sex, two counts of traveling interstate with the intent to have sex with a minor, one count of knowingly possessing child pornography,

and one count of knowingly receiving child pornography. *Id.* at ¶ 9. He was convicted of the charges in a court-martial proceeding and sentenced to 30 months of confinement in the United States Disciplinary Barracks—though the child-pornography charges were later dismissed on appeal. *See United States v. Tynes*, 60 M.J. 331 (2004). He served 19 months of that sentence. *Tynes* at ¶ 9.

{¶ 11} When we disapproved Tynes's first registration application, we expressed significant concerns regarding his honesty and integrity during the admissions process and his delay in seeking the mental-health treatment that had been recommended at the time of his criminal convictions. *Id.* at ¶ 19. The board found that those concerns remain relevant in this proceeding.

{¶ 12} In his first character-and-fitness proceeding, Tynes attempted to minimize his culpability for his criminal conduct by claiming that he never intended to follow through with his first attempt to meet a girl in person and suggesting that the second girl he attempted to meet was actually a civilian vigilante. *Id.*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.3d 1237, at ¶ 19. At Tynes's May 2019 character-and-fitness hearing, his counsel asked him to talk about his attempts to minimize his conduct during his first character-and-fitness hearing. Tynes testified that he originally made the statements at his 1999 criminal trial because he was "basically terrified" of losing his military retirement and his career. He stated, "I was looking at incarceration, and it's very difficult to face squarely the worst thing you ever did in your life. So to any extent that I said anything that would minimize my culpability, I was in error, that was wrong, but I did it because I was terrified." He also testified that his civilian-vigilante claim "was quite irrelevant because that wasn't what I believed when I was communicating with her."

{¶ 13} Tynes testified that since his trial, he had had "20 years to think back on what I did and why I did it and the consequences of it, and I fully acknowledge that the culpability was mine and mine alone. Any statements made previously to the contrary. I was the one who walked myself off that cliff. Nobody else was

responsible." But he never acknowledged that he had made the same civilian-vigilante statements and continued to minimize his criminal conduct at his first character-and-fitness hearing—and more recently in the narrative statement he filed with his application to take the February 2019 bar exam.

{¶ 14} We note that at the beginning of his most recent character-and-fitness hearing, Tynes did not relay the facts underlying his criminal convictions to the panel in his own words but instead affirmed the facts as they were posited by his counsel during his counsel's questioning of him. The board found that the words Tynes chose later in that hearing to describe his criminal conduct and resulting convictions demonstrated his lack of candor and failure to accept responsibility for his actions. For example, Tynes stated that counseling helped him to examine how he went "from being a military officer to being *some guy that was being arrested for talking to kids*" (emphasis added.) as though he had done nothing more than talk to children over the Internet. He also spoke of the treatment options available during his military confinement for "convictions like mine" and suggested that he did not seek assistance from the Ohio Lawyers Assistance Program ("OLAP") when he was in law school because he did not think it applied to his situation. Contrary to Tynes's claims that he has accepted full responsibility for his misconduct, this testimony demonstrates that more than 20 years after his convictions, he is still unable to speak candidly about—and has not convincingly come to terms with—his attempts to have sex with minors. "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Gov.Bar R. I(11)(D)(3).

{¶ 15} More than three years ago, we found that although a course of mental-health treatment had been recommended at the time of Tynes's convictions, he had not pursued that treatment in earnest until the fall of 2013—and that he had only done so in response to recommendations that arose in the course of the

admissions process. *Tynes*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.2d 1237, at ¶ 19.

{¶ 16} The forensic psychologist who evaluated Tynes in 2013 suggested that although Tynes was "not a particularly psychologically-minded individual," he could benefit from short-term counseling with a mental-health professional experienced in counseling convicted sex offenders. Approximately four months later, Tynes entered into a five-year mental-health-recovery contract with OLAP and commenced regular psychotherapy sessions with a licensed, independent social worker. *Id.* at ¶ 14, 23. His ongoing mental-health treatment and continuing participation in OLAP weighed heavily in our decision to permit him to reapply for admission to the bar. *Id.* at ¶ 23.

{¶ 17} At his most recent character-and-fitness hearing, Tynes submitted just two exhibits and his own testimony. The first exhibit was a cursory letter from Scott R. Mote, the executive director of OLAP, stating that Tynes had successfully complied with his five-year OLAP contract.

{¶ 18} The second exhibit was a letter from Daniel Watson, the licensed, independent social worker who had conducted counseling sessions with Tynes about once or twice a month since November 2013. The board found that Watson's letter offered little assistance in evaluating the current status of Tynes's character, fitness, and moral qualifications to practice law in Ohio. Watson failed to provide any information regarding his own education and training—stating only that he had been a therapist for 15 years and had spent three of those years cofacilitating court-ordered forensic sex-offender-treatment groups. Although Watson acknowledged that part of his job was to ensure that Tynes had a thorough understanding of the dynamics that led him to attempt to engage in relationships with underaged females and of the harm that that misconduct caused, he offered no insight into what those dynamics were or how Tynes had come to understand them. Instead, Watson declared that Tynes already had a good working knowledge of the dynamics that

had led him to behave inappropriately and that those dynamics no longer existed in his life. Watson stated that he had helped Tynes cope with the damage he had caused to himself and his family, and after quoting a newspaper article about sex-offender-recidivism rates, he opined that Tynes is not likely to reoffend.

{¶ 19} In his testimony, Tynes offered at least two explanations for his criminal conduct. First, he claimed that it was "a really lousy way of relieving stress," the source of which was "[m]ostly probably the normal things any family with four kids would have. A lot of fighting, a lot of disagreements, a lot of argument, a lot of discipline issues." He also suggested that a midlife crisis may have been a component of that stress, stating, "I was hitting 50 and at 50 one starts to feel the decline. I can't put it better than that. So I wound up in the sexually oriented chat rooms and what I found, the one I wound up getting in trouble in, all these people were saying really nice things about me and they never asked me to take out the trash."

{¶ 20} Tynes testified that he is now 20 years older, has learned from his mistakes, and has found more appropriate outlets to relieve his stress—including his relationship with his wife and normal daily activities such as working around the house, reading, writing, studying, martial arts, and exercising. To the extent that everyday stress contributed to Tynes's criminal conduct, however, the board questioned the efficacy of his chosen stress relievers—particularly in light of the fact that Tynes has identified his relationship with his wife as a source of stress that drove him to engage in his criminal conduct and also as one of his most important stress relievers.

{¶ 21} Tynes's second explanation for his criminal conduct was that he suffered from an Internet or sex addiction and that he often spent at least two hours a day in adult chat rooms—overriding his own thoughts that he should not be engaging in that behavior. Although Tynes testified that his addiction had led to his criminal convictions, caused him to neglect his family responsibilities, and

frequently made him late for work, he offered no evidence that he has ever received treatment for his addiction. Tynes also denied that he ever visited sexually oriented chat rooms on the Internet following his release from confinement—though he previously testified that he had entered a sexually oriented online chat room for adults sometime after his incarceration. *Tynes*, 146 Ohio St.3d 243, 2016-Ohio-3307, 54 N.E.3d 1237, at ¶ 12. Although Tynes has continued to participate in psychological treatment, it is not clear that the treatment is geared toward his sex offenses or his addiction. An untreated addiction raises significant concerns about an applicant's character, fitness, and moral qualifications if the disorder could affect the applicant's ability to practice law in a competent and professional manner. *See* Gov.Bar R. I(11)(D)(3)(e).

{¶ 22} Tynes's own testimony regarding his untreated addiction and his continuing lack of candor throughout these admissions proceedings raise grave concerns about his ability to (1) exercise good judgment in conducting his professional business, (2) conduct himself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations, (3) conduct himself diligently and reliably in fulfilling all obligations to clients, attorneys, courts, and others, and (4) conduct himself professionally and in a manner that engenders respect for the law and the profession. *See* Supreme Court of Ohio, *Definitions of Essential Eligibility Requirements for the Practice of Law*, Requirement Nos. 3, 4, 7, and 10, https://www.supremecourt.ohio.gov/AttySvcs/admissions/pdf/ESSENTIAL_ELI GIBILITY_REQUIREMENTS.pdf (accessed Feb. 13, 2020) [https://perma.cc/LZA2-N4NC]. However, Tynes has not sought employment or taken other actions to demonstrate that he is capable of satisfying these requirements. And although he testified that since we denied his last application, he has volunteered with a nonprofit organization that provides legal assistance to immigrants and worked on complaints for wage theft, he offered little evidence

regarding the extent of his involvement or the quality of his performance in those activities that might help to alleviate our concerns.

{¶ 23} While the board acknowledged Tynes's statements that his criminal conduct was wrong, it found that his words, manner, and demeanor indicated that his remorse was not genuine. Indeed, the board concluded that "Tynes projects an air of arrogance, making it evident that he is sorry only that he did something that stands in the way of his becoming a lawyer." Finding that Tynes's lack of honesty and integrity have persisted through two character-and-fitness proceedings, the board found that Tynes has failed to carry his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications to practice law and recommends that his pending applications be disapproved. *See* Gov.Bar R. I(11)(D)(1).

{¶ 24} Recognizing the enduring nature of Tynes's lack of candor and his unwillingness to accept responsibility for his past criminal conduct and convinced that the passage of additional time is not likely to cure that deficiency, the board also recommends that we permanently deny Tynes the privilege of reapplying for admission to the practice of law in Ohio. *See, e.g.*, *In re Application of Cvammen*, 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498 (permanently denying an application to register as a candidate for admission to the Ohio bar because ethical infractions so permeated the admissions process that the applicant's honesty and integrity were shown to be intrinsically suspect); *In re Application of Keita*, 74 Ohio St.3d 46, 656 N.E.2d 620 (1995) (permanently denying registration and bar-exam applications of an applicant who was unwilling to accept responsibility for questionable past behaviors and lapses in judgment).

{¶ 25} Based upon the foregoing, we agree that Tynes has failed to carry his burden of proving that he currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. We further find that Tynes's inability or unwillingness to accept responsibility for his past criminal conduct and

Tynes's enduring lack of candor justify the board's recommendations that his pending applications be denied and that he be precluded from reapplying for admission to the Ohio bar.

{¶ 26} Accordingly, we disapprove Tynes's pending applications and forever bar him from reapplying for the privilege to practice law in Ohio.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Montgomery Jonson, L.L.P., George D. Jonson, and Lisa M. Zaring, for applicant.

Dinsmore & Shohl, L.L.P., and Eric K. Combs, for the Cincinnati Bar Association.

_____