[Cite as *Schobelock v. Schobelock*, 2024-Ohio-879.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

KAYLEE SCHOBELOCK,           :
                             :
    Petitioner-Appellee,     :    Case No.  23CA4028
                             :
    v.                       :
                             :    DECISION AND JUDGMENT
JAMES SCHOBELOCK,            :    ENTRY
                             :
    Respondent-Appellant.    :    **RELEASED 3/06/2024**
_____

APPEARANCES:

Justin R. Blume, Wheelersburg, Ohio, for Appellant.

Robert T. Trujillo, Rick L. Faulkner, The Faulkner Law Office,
Wheelersburg, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} James Schobelock appeals the March 31, 2023 Domestic

Violence Civil Protection Order issued by the Scioto County Common Pleas

Court - Domestic Relations Division, along with the May 12, 2023

Judgment Entry of the same court denying his Motion for New Trial.  Mr.

Schoebelock, "Appellant," contends that the trial court's decision to enter

the civil protection order is against the manifest weight of the evidence.

Appellant also contends the trial court erred in denying his Motion for New

Trial based on newly discovered evidence.  However, upon review, we find

no merit to the arguments raised under Appellant's assignments of error.

Accordingly, they are overruled and the judgment of the trial court is

affirmed.

FACTS

{¶2}  Appellee Kaylee Schobelock, "Appellee," is a nurse

practitioner.  Appellant is a supervisor at United Parcel Service (UPS).  He

also has training in law enforcement.  Appellee has three minor children

from a prior marriage, B.C., P.C., and C.C.  The parties also have one minor

child together, R.S., who was 15 months old at the time of the underlying

proceedings.

{¶3}  On March 2, 2023, Appellee, pro se, filed a petition for

Domestic Violence Civil Protection Order (DVCPO).  The petition alleged

an incident of domestic violence occurring on March 1, 2023, and threats of

violence to her three older children.  Appellee requested an ex parte order

pursuant to Ohio Revised Code Section 3113.31, and sought protection for

Appellee and all her minor children.  The trial court granted the ex parte

petition the same day it was filed and scheduled a full hearing for March 7,

2023.

{¶4} On March 7, 2023, the parties, with counsel, reached an

agreement to modify the terms of the ex parte order so as to allow parenting time between Appellant and R.S.  The full hearing was continued to March 30, 2023.  On March 17, 2023, Appellee filed an amended petition alleging multiple additional incidents of domestic violence and threats.

{¶5} On March 30, 2023, the trial court conducted a full hearing on Appellee's amended petition.  The court heard testimony from Sergeant Brian Nolen, Appellant, and Appellee.  Several exhibits were admitted into evidence.

{¶6} On March 31, 2023, the trial court issued an order granting the amended petition for DVCPO for one year.  Appellee and her three older minor children were named as the protected parties.  R.S. was not added as a protected party.

{¶7} On April 20, 2023, Appellant filed, pursuant to Civil R. 59(A)(8), a Motion for New Trial.  Appellee subsequently filed a Memorandum Contra Motion for New Trial.  The trial court denied Appellant's motion by entry dated May 12, 2023.

{¶8} This timely appeal followed.  Where pertinent, we will set forth below additional facts adduced through the testimony of the witnesses at the full hearing.

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED IN GRANTING
      PETITIONER/APPELLEE AN EX PARTE
      DOMESTIC VIOLENCE CIVIL PROTECTION
      ORDER IN THAT THERE WAS INSUFFICIENT
      EVIDENCE TO ESTABLISH THAT
      PETITIONER/APPELLEE OR ANY OF THE
      OTHER PROTECTED PARTIES WERE
      VICTIMS OF DOMESTIC VIOLENCE AS
      DEFINED IN OHIO REVISED CODE SECTION
      3113.31.

II.   THE TRIAL COURT ERRED IN GRANTING
      THE DOMESTIC VIOLENCE CIVIL
      PROTECTION ORDER IN THAT THERE WAS
      INSUFFICIENT EVIDENCE TO ESTABLISH
      THAT PETITIONER/APPELLEE OR ANY OF
      THE OTHER PROTECTED PARTIES WERE
      VICTIMS OF DOMESTIC VIOLENCE AS
      DEFINED IN OHIO REVISED CODE SECTION
      3113.31.

III.  THE TRIAL COURT ERRED AS A MATTER OF
      LAW IN DENYING
      RESPONDENT/APPELLANT'S MOTION FOR
      NEW TRIAL.

FIRST ASSIGNMENT OF ERROR - EX PARTE
ORDER

{¶9} Appellant's first assignment of error challenges the trial court's

issuance of the ex parte protection order.  This court, however, has observed

that an ex parte order is not final and appealable, pursuant to R.C.

3113.31(G).  Furthermore, the court's final order of protection supersedes

the ex parte order, rendering any claim of error with regard to the ex parte order moot. *See Daugherty v. Daugherty,* 4th Dist. Hocking No. 2012-Ohio-1520, at ¶ 15, citing *In re J.R. R.,* 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, at ¶ 29 (explaining that in domestic relations actions, final order supersedes temporary orders, rendering possible errors in the temporary orders moot). *See also J.J. v. Kilgore,* 10th Dist. No. 20AP-401, 2021-Ohio-928, at ¶ 7. The ex parte order herein merged into the order granting the DVCPO, and any possible error contained therein is now moot. Therefore, we overrule the first assignment of error.

### SECOND ASSIGNMENT OF ERROR - DVCPO

{¶10} Within the second assignment of error, Appellant argues the trial court's decision granting the amended petition and issuing a DVCPO was against the manifest weight of the evidence. Appellant contends that Appellee initiated the argument and physical altercation that gave rise to the filing of the original petition, and that Appellee caused her own injuries. Appellant contends that the evidence before the trial court demonstrated that his own conduct was neither intentional nor reckless. In granting the petition and order, the trial court made the following findings of fact:

> Petitioner and/or Petitioner's family members are victims of domestic violence as alleged in the Petition and as defined in R.C. 3113.31. The Court gives greater weight and credibility to the testimony of the Petitioner than the

testimony of the Respondent. The Court finds that the protected persons herein are in immediate and present danger of domestic violence and for good cause shown, the following temporary orders are necessary to protect the persons named in this Order from domestic violence.

We begin by setting forth the appropriate standard of review of the trial court's order.

### STANDARD OF REVIEW ON PROTECTION ORDERS

{¶11}   " ' "Our standard of review upon a challenge to a CPO depends upon the nature of the challenge to the CPO." ' " *Dietrich v. Dietrich*, 4th Dist. Pickaway No. 22CA15, 2023-Ohio-4822, at ¶53, quoting *York v. York*, 2022-Ohio-4733, 203 N.E.3d 866, at ¶ 46 (4th Dist.), quoting *Wootten v. Culp,* 2017-Ohio-665, 85 N.E.3d 198, ¶ 8 (4th Dist.) (Internal citation omitted.)  As in Appellant's case,

> When the issue is whether a CPO should have been issued at all, we must determine whether the trial court's finding that the petitioner has shown by the preponderance of the evidence that the petitioner or petitioner's family or household members are in danger of the domestic violence is against the manifest weight of the evidence.

*Martindale v. Martindale*, 2017-Ohio-9266, 102 N.E.3d 19, ¶15 (4th Dist.), citing *Wootten* at ¶ 18.

{¶12} In undertaking a manifest-weight-of-the-evidence review, "[w]e are guided by the presumption that the trial court's factual findings are

correct because of the knowledge that the trial judge 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Henry v. Henry,* 4th Dist. Ross No. 4CA2781, 2005-Ohio-67, ¶ 14, quoting *Seasons Coal. Co. v. Cleveland,* 10 Ohio St.3d 77, 79, 461 N.E.2d 1273 (1984). "[W]e thus defer to the trier of fact on these issues[.]" *Wootten* at ¶ 20, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. And the trier of fact is free to believe all, part, or none of any witnesses' testimony. *Id*., citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, at ¶ 23.

{¶13} "Under a manifest-weight-of-the-evidence review, '[a]n appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case.' " *Dietrich*, *supra*, at ¶ 55, quoting *Bugg v. Fancher,* 4th Dist. Highland No. 6CA12, 2007-Ohio-2019, ¶ 9, citing *C.E. Morris Constr. Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record as a whole contains some evidence from which the trier of fact could

have reached its ultimate factual conclusions. *Bugg, supra*, citing *Seasons*

*Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79, 461 N.E.2d 1273 (1984).

Ultimately, a reviewing court should find a trial court's decision is against

the manifest weight of the evidence only in the exceptional case in which the

evidence weighs heavily against the decision. *Wootten* at ¶ 21, citing *State*

*v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 330.

## LEGAL ANALYSIS

{¶14} A person seeking a civil protection order must prove domestic

violence or the threat of domestic violence by a preponderance of the

evidence. *Henry, supra,* at ¶15, citing *Felton v. Felton,*79 Ohio St.3d 34,

1997-Ohio-302, 679 N.E.2d 672,  paragraph two of the syllabus.  R.C.

3113.31(A)(1) defines domestic violence:

> "Domestic violence" means the occurrence of one or more
> of the following acts against a family or household
> member: (a) Attempting to cause or recklessly causing
> bodily injury; (b) Placing another person by the threat of
> force in fear of imminent serious physical harm or
> committing a violation of section 2903.211 or 2911.211 of
> the Revised Code.

*Martinez v. Martinez,* 12th Dist. Butler No. 2023-Ohio-4783, at ¶ 17.  R.C.

3113.31 does not define "bodily injury," but "for purposes of the offense of

domestic violence under R.C. 2901.01(A)(3), 'physical harm' to a person

means 'any injury, regardless of its gravity or duration.' " *McGrady v.*

*Muench,* 12th Dist. Warren No. CA2018-122-145, 2019-Ohio-2677 at ¶ 13, quoting *J.R. v. E.H.,* 10th Dist. Franklin No. 16AP-431, 2017-Ohio-516, ¶ 13; *State v. Reynolds,* 10th Dist. Franklin No. 03AP-701, 2004-Ohio-3692, ¶ 14.

{¶15} "Imminent" means "on the point of happening." *Henry,* at ¶ 19; Black's Law Dictionary (6Ed.) at 750; Ohio Domestic Violence Law (2004), Section 8.4, at 212; *State v. Collie*, 108 Ohio App.3d 580, 583, 671 N.E.2d 338 (1st Dist.1996) (defining "imminent" as "threatening to occur immediately"). In *Strong v. Bauman,* 2d Dist. Montgomery Nos. 17256 and 17414, 1999 WL 317432 (May 21, 1999), at *4, the court defined "imminent" as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." "Imminent" does not mean that "the offender carry out the threat immediately or be in the process of carrying it out." *Id.* Rather, the critical inquiry is "whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm * * * [which] necessarily involves both subjective and objective elements." *Id.*

{¶16} Appellee set forth these allegations of physical abuse and threatening behavior in her amended petition:

1. The March 1, 2023 incident over washing dishes where Appellee was struck with a cup and scratched with keys;

2. A November 2022 incident at the kitchen table wherein Appellant bent Appellee's arm behind her back until it hurt;

3. Appellant's threat to "put a bullet" in Appellee's daughter's head;

4. Appellant exhibited "extreme anger/jealousy/resentment" towards Appellee's ex-husband;

5. A December 28, 2022 incident when Appellant threatened to scare B.C.'s friend;

6. Appellant's threats to kill Appellee and himself if she ever cheated on him.

{¶17} Regarding the first allegation, Sergeant Brian Nolen testified that he responded to a call at the parties' residence on March 1, 2023. According to Sergeant Nolen:

> [Appellee's] complaint was there had been an argument between her and her husband over doing dishes. He had thrown a cup that hit her in the head. I asked her if that was intentional, she said she didn't think so. She then went on to explain that she had been scratched in the arm with car keys and showed me her forearm, which I could see a visible scratch.

{¶18} Sergeant Nolen also testified to his interaction with Appellant as follows:

> Later I spoke with James inside. James had told me the same story, there had been an argument, it was over something silly. He was trying to take the baby and leave to go to his mother's so that things could calm down. He told me, and admitted the same thing that Kaylee had told me, he turned to leave, she tried to grab the baby from him and Kaylee got scratched. He told me it was an accident, caused by him twisting his body, turning, trying to keep her from getting the baby from him.

{¶19} According to Sergeant Nolen, Appellee was adamant that Appellant scratched her intentionally. Sergeant Nolen arrested Appellant and filed a domestic violence charge.

{¶20}Sergeant Nolen further testified he was subsequently contacted by Appellee on March 28, 2023 to report a Facebook message from Appellant. The message was sent despite the ex parte order in effect. Sergeant Nolen investigated the matter but did not ultimately file a charge.

{¶21}On direct examination, Appellee testified to two acts of physical violence and to multiple threats. Appellee first testified that on March 1, 2023, she had been gone all day. When she returned home, Appellant had been drinking and there were four or five beer cans in the trash can.

> I had just gotten home from work, there were dishes in the sink. I was trying to load them in the dishwasher. I put a bowl, a plastic mix, mixing bowl on the top rack of the dishwasher um James then told me that that should go on the bottom rack of the dishwasher. I told him, I do the dishes the majority of the time, I don't need you critiquing me. At that point, he became very angry by my statement.

> \* \* \* He had a plastic cup in his hand, he threw it in the sink, it bounced out and hit the floor.  He picked it up a second time, threw it in the sink, it bounced out and hit me in the head.  At that point we started arguing further because he had hit me with the cup.  He picked up a vacuum cleaner, threw it on the ground, um it broke apart into a couple pieces.  He picked it back up and threw it a second time.

{¶22}  Appellee further testified that when Appellant decided to leave with the baby, she was concerned because he had been drinking all day and he was impaired.  She testified that when she tried to take R.S. from Appellant, "he had the keys in his hand and scraped them down my arm.  And it wasn't an accident."  Appellee identified Exhibits 8A, B, and C, pictures of her right forearm after the incident.

{¶23}  Appellee testified to a prior incident of violence.  Appellant and she were at the kitchen table arguing.  The three older children were there.  Appellant was yelling at the older children and Appellee told him to "knock it off."  Appellee pointed a fork 8-12 inches away from Appellant's face.  Appellant then pulled her out of her seat and put her arm behind her back.  Appellee told Appellant he was hurting her.  Appellee did not contact law enforcement because she had no physical marks and did not think she could prove domestic violence.

{¶24}  Appellee also testified to several threats.  Appellee explained that Appellant tried to limit her older children's interactions with R.S.

Appellee was sitting on the couch and they had been arguing.  Appellant "got in her face, nose to nose, and told her, 'I'm just telling you right now if any of those other kids would hurt [R.S.], I will put a bullet in their head.' "

{¶25}  Appellee also testified that Appellant threatened to scare B.C.'s friend.  Appellee testified that Appellant intimidates her and her family.  Appellant previously threatened that "if I were to ever cheat on him that he would kill me and kill whoever I was with."  Appellee did not reach out to law enforcement because the threats were conditional.

{¶26}  Appellee testified she experienced emotional distress due to Appellant's words and actions.  She was also concerned about his "jealousy and control issues."  Appellee knows Appellant owns guns and has harmed others in "romantic relationships."

{¶27}  On cross-examination, Appellee admitted she didn't tell Sergeant Nolen that she feared her husband was impaired.  She admitted she did not document the beer cans in the trash can although she documented her injuries.  Appellee admitted she tried to forcibly remove R.S. from his hands.  Appellee testified her husband had threatened to kill her multiple times although she couldn't remember dates.  Appellee believes Appellant has mental health issues.  Appellee admitted that Sergeant Nolen asked her if

she wanted to file charges as a result of the March 28 message from Appellant and she declined.

{¶28} On direct, Appellant testified Appellee is often stressed over work and she drinks every evening. Appellant testified that on March 1 he and R.S. were in the kitchen. R.S. was in her high chair. Appellee arrived home and he could tell she was in a bad mood. She had her backpack, purse, and beers in her arm. Appellee started doing the dishes. Appellant told her she had done something wrong with the dishes and they started arguing.

{¶29} Appellant explained that he had a shaker cup of popcorn in his hand and he threw it in the kitchen sink. The popcorn spilled "all over." Appellant retrieved the cup, threw it in the sink again, and this time it bounced out and hit Appellee. Appellant attempted to use the vacuum to sweep up the popcorn. He threw the vacuum down and picked it back up in "agitation."

{¶30} Appellant then walked into the living room to decide what to do. They were still arguing. Appellant decided to take R.S. and go to his mother's house to "get out of" the situation. As he held R.S., he told Appellee that he was leaving for his mother's home and reached to get his keys. Appellee got mad and tried to take R.S., but he "clinches onto" the

baby.  Appellant was holding onto R.S. and Appellee's hands were over top of his arms.

{¶31}  Appellant testified he did not intend to hurt Appellee and she was accidentally scratched in the process of the struggle over R.S.  He denied "dragging" the keys down her arm.  Appellant took R.S. out to the car to make sure he had a diaper bag.  As he opened the car door, Appellee said she was going to call the sheriff.  He walked back into the house and Appellee was on the phone with 911.  Appellant then called his sister and waited with R.S. on the couch until the officer arrived.  The officer talked to Appellee outside.  When Appellee and the officer came inside, Appellant was arrested.

{¶32}  Appellant described Appellee during the incident as "upset but not scared."  She did not seem concerned for her safety or that of the kids.  Appellant admitted he is a "loud talker" especially if he gets excited.  He admitted he was angry and upset, but he was not screaming or yelling and did not intend to harm Appellee.  Appellant testified he thinks "the whole thing" is to "get control" in the parties' divorce proceedings.  Appellant denied drinking beer before Appellee got home.  The beer cans in the trash were from the prior evening.

{¶33} Appellant testified he is in anger management. He denied mental health issues or alcohol issues.[1]

{¶34} Regarding the March 28 message, Appellant testified he texted Appellee accidentally when he was trying to get in touch with his mother-in-law to arrange a visit. Appellant testified the accident happened because he was trying to find a place to live, arrange the visit, and "doing too many things at one time." Aside from the accidental message, he has complied with the court orders. Appellant identified Exhibit 13 as the message he meant to send to his mother-in-law, not Appellee.

{¶35} Regarding the fork incident, Appellant could not recall why they were arguing. Appellee stuck a fork about three inches from his face and he thought it was dangerous. Appellee and the older children were laughing at him. Appellant moved Appellee's hand out of the way, grabbed R.S., and went into the bedroom.

{¶36} As to the alleged threats to the kids, Appellant testified Appellee and he were having a "what if" conversation about what would happen if someone purposely hurt or killed R.S. Appellant testified his reaction was to say he would "kill them." Appellant asked Appellee the

---

[1] Appellee testified she registered Appellant for anger management the day after the key incident.

same question and she gave the same answer as his.  He later admitted he had no proof of this alleged statement of Appellee.

{¶37}  Appellant testified Appellee's oldest daughter B.C. causes problems and is argumentative and undisciplined.  Appellant testified he shuts himself in the bedroom with R.S. to avoid B.C.  As to the alleged threat to B.C.'s friend, Appellant testified  B.C. had been disrespectful and Appellant changed his mind about permission to have the friend over.

{¶38}  Appellant admitted calling B.C. a bitch "because of how she acts and how she treats myself and her mother."  He denied bending his wife's arm behind her back with the children at the table.  He denied being jealous but testified he did not like Appellee's ex-husband "because he's not kind to her and not good to his kids."

{¶39}  Appellant admitted throwing things could have an intimidating effect.  He admitted cussing around the children.

{¶40}  Melissa Yates, Appellant's sister, also testified on his behalf. Yates was on the phone with Appellant on March 1, 2023.  She overheard Appellee yelling and cussing in the background.  Appellant told her about the incident and that he was going to leave to get away from the situation. On cross-examination, Yates admitted that she did not see the scratching incident.  She also acknowledged a prior conversation with Appellee during

which she told Appellee "I don't understand how you put up with some things."  On redirect, Yates described "some things" as "nitpicking."[2]

{¶41}  Upon our review of the testimony, we find that the trial court's finding that Appellee and her family members are victims of domestic violence as alleged in the amended petition and pursuant to R.C. 3113.31 is not against the manifest weight of the evidence.  The trial court also noted in the order that it gave greater weight and credibility to the testimony of Appellee.  Here, we are mindful that it is the fact-finder who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses. *See Dietrich, supra,* at ¶57; *Seasons Coal,* 10 Ohio St.3d at 80; *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).  As a consequence, when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed.  *See State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).  *See also Rupeka v. Mokros*, 11th Dist. Trumbull No. 2022-T-0097, 2023-Ohio-2542, at ¶11; *McCloud v. Baker*, 4th Dist. Hocking No. 21CA3, 2022-Ohio-1307,

---

[2] At the conclusion of the full hearing, the trial court admitted Appellee's exhibits including text messages, Facebook messages, photographs of her forearm after the March 1 incident, Sergeant Nolen's narrative, and the Scioto County Sheriff's Department report with supplements.  The court also admitted one undated text message offered by Appellant.

at ¶8, quoting *Seasons Coal, supra*, 10 Ohio St.3d 77, 81 ("A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.")

{¶42} Based on the foregoing, we find Appellant has not demonstrated that the court's finding of domestic violence was against the weight of the evidence. Accordingly, the second assignment of error is without merit and is hereby overruled.

## THIRD ASSIGNMENT OF ERROR - MOTION FOR NEW TRIAL

## STANDARD OF REVIEW

{¶43} The third assignment of error concerns Appellant's Motion for New Trial brought pursuant to Civ.R. 59(A)(8) based on "newly discovered evidence." " 'A trial court's decision denying a new trial pursuant to Civ.R. 59(A)(8) will not be disturbed, absent an abuse of discretion.' " *Lawless v. Board of Education of Lawrence County Educational Service Center,* 2020-Ohio-117, 141 N.E.3d 267, at ¶68 (4th Dist.), quoting *Gregory v. Kottman-Gregory*, 12th Dist. Madison Nos. CA2004-11-039, 2005-Ohio-6558, ¶ 25. An abuse of discretion occurs when a court "acts in an unreasonable, arbitrary, or unconscionable manner." *State ex rel. Charvat v. Frye,* 114 Ohio St.3d 76, 2007-Ohio-2882, 868 N.E.2d 270, at ¶ 16.

LEGAL ANALYSIS

{¶44}  In the motion before the trial court, Appellant informed that Appellee failed to appear at a scheduled pretrial hearing in the criminal case related to the alleged domestic violence herein, despite being properly subpoenaed.  This omission occurred after the parties' full hearing and issuance of the DVCPO.  Appellant contended that Appellee's conduct therefore was "inconsistent" with that of a legitimate victim of domestic violence.  Appellant further contends that Appellee's failure to appear is relevant evidence going directly to Appellee's credibility and evidence he was unable to procure prior to the full hearing.

{¶45} Civ.R. 59(A)(8) states that a court may grant a new trial based on "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence [the party] could not have discovered and produced at trial[.]"  "A trial court does not abuse its discretion in overruling a Civ.R. 59 motion for a new trial based upon newly discovered evidence where the events constituting the newly discovered evidence occurred after trial and subsequent to the court decision but prior to entry of judgment." *Ewing v. Ewing,* 4th Dist. Meigs No. 368, 1986 WL 6049, *3 (May 20, 1986).  For purposes of Civ.R. 59(A)(8), the phrase "newly discovered evidence" "refers to evidence of facts in existence *at the time of trial* of

which the aggrieved party was excusably ignorant." (Emphasis added.) *Id.* The principle that facts that come into existence after trial are not newly discovered evidence that would justify granting a new trial "is well grounded in the basic concept of finality of judgments." *In re S.S.,* 9th Dist. Wayne No. 04CA0032, 2004-Ohio-5371, ¶ 14. As the Ninth District Court of Appeals has stated:

> To permit parties to bring up issues and facts that occurred after the trial would only serve to leave judgments unsettled and open to challenge at any time. *Hails v. Hails* (Sept. 30, 1993), 11th Dist. No. 92-L-182, 1993 WL 407258. There must be a reasonable end to litigation. *Id.* To allow otherwise would mean the potential perpetual continuation of all trials in derogation of the notion of finality. Fink, Greenbaum, & Wilson, Guide to the Ohio Civil Rules of Procedure (2003) § 59:14.

{¶46} Based upon the foregoing principles, Appellee's failure to appear at the criminal pretrial may not be considered newly discovered evidence pursuant to Civil Rule 59(A)(8). Consequently, the trial court did not abuse its discretion by denying Appellant's motion for a new trial. This assignment of error is also without merit and is hereby overruled.

{¶47} Having found no merit to any of Appellant's assignments of error, we hereby affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J., & Wilkin, J., Concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**