IN RE APPLICATION OF DAUBENMIRE.

[Cite as *In re Application of Daubenmire,* 137 Ohio St.3d 435, 2013-Ohio-4977.]

*Attorneys—Character and fitness—Applicant convicted of pandering obscenity involving a minor—Applicant may apply to take the July 2018 bar examination.*

(No. 2013-0458—Submitted May 8, 2013—Decided November 14, 2013.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 539.

_____

**Per Curiam.**

**{¶ 1}** Zachary Charles Daubenmire of Thornville, Ohio, is a 2011 graduate of Case Western Reserve University School of Law and has applied as a candidate for admission to the Ohio bar. The Licking County Bar Association recommended approval of his application, with qualifications. Because Daubenmire had been convicted of a felony—pandering obscenity involving a minor—in 2007, the Board of Commissioners on Character and Fitness conducted an investigation pursuant to Gov.Bar R. I(11)(D)(5)(a).

**{¶ 2}** Following a hearing, in which a panel of the board heard testimony from Daubenmire and four additional witnesses and received documentary evidence, the panel recommended that Daubenmire's character, fitness, and moral qualifications be disapproved but that he be permitted to reapply as a candidate for the July 2014 bar exam. The board adopted the panel's report in its entirety.

**{¶ 3}** While we adopt the board's findings of fact and disapprove Daubenmire's pending application, we have grave concerns about permitting an applicant to take the bar exam and, perhaps, commence the practice of law while

he is legally obligated to register as a sex offender—an obligation that Daubenmire will have until February 27, 2017. Therefore, we disapprove Daubenmire's pending application and will permit him to reapply as a candidate for the July 2018 bar exam.

**Statement of Facts**

{¶ 4} The primary focus of the December 13, 2012 panel hearing was Daubenmire's conviction for the second-degree felony of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1) and/or (A)(6).

{¶ 5} The panel found that on the surface, Daubenmire was an unlikely candidate to engage in the conduct that led to his arrest and conviction. He was raised in a strict religious household and was a good student and star athlete. His father, a minister, was also his high school football coach. Daubenmire testified that he had had no disciplinary problems in school but admitted that he began looking at Internet pornography while he was still in high school. In 2001, during his freshman year at Kenyon College, he was diagnosed with neurotic depression, triggered at least in part by separation anxiety, and began taking an antidepressant. He also began to download pornographic pictures and videos of children under the age of 18.

{¶ 6} Daubenmire testified that he was interested in viewing only teenage girls and admitted that he knew that the images he downloaded depicted girls under the age of 18, but he had convinced himself that watching their sexual activity online was preferable to actually engaging in such activities. He was adamant that he had had no interest in viewing young, undeveloped children, and he stated that he deleted pictures or videos that depicted those subjects.

{¶ 7} Daubenmire's illicit activity was discovered in 2006, when the family computer malfunctioned and his father sent it to a repair shop to have data transferred to a new computer. The computer technician discovered child pornography on the computer and reported it to the authorities. The titles of the

files found on the computer clearly identify the participants as being under the age of 18, and there is no dispute that some of the videos depicted sexual activity involving children. Daubenmire does not dispute that when he was caught, he had been viewing illegal child pornography for approximately five years. He cooperated with the criminal investigation, and on the advice of counsel, he entered a no-contest plea. He was sentenced to five years of community control and ordered to register as a sexually oriented offender, to perform 100 hours of community service, to participate in sexual-offender counseling, and to abstain from alcohol.

{¶ 8} The panel found that Daubenmire had complied with all the conditions of his criminal sentence. In addition to a required sexual-offender counseling program, he voluntarily participated in individual therapy for approximately five years, stopping only when his therapist expressed the opinion that he no longer needed counseling for any sexual issues. His efforts were rewarded in 2009, when the sentencing court granted his motion for early release from his community-control sanction.

{¶ 9} Recognizing that he would be barred from teaching and coaching—his chosen profession before his conviction—Daubenmire eventually accepted a job as an administrative assistant, working for an attorney who was a friend of his father. That job and his own experience with the legal system inspired him to apply to law school. He fully disclosed his conviction and was admitted to Case Western Reserve University School of Law in 2008. With the assistance of the law-school dean, he sought treatment from Candace Risen, L.I.S.W.-S, a recognized expert in sexual problems and deviances, and participated in therapy with her until May 2011.

{¶ 10} Risen testified that the focus of Daubenmire's therapy was to identify and help him understand what led him to view child pornography. Based on her treatment, she believed that there were two primary issues. First, she

believed that his repressed upbringing caused him to seek sexual experience vicariously, rather than engaging in age-appropriate sexual conduct. She also found that he had developed anger toward, and resentment of, his father, who had set high standards for him, and who would have been subject to embarrassment if he failed to live up to those expectations. Risen expressed her professional opinion that Daubenmire (1) does not suffer from a sexual or deviance disorder, (2) is very unlikely to engage in the conduct that led to his conviction in the future, (3) does not require additional therapy for sexual issues, and (4) is fit to engage in the practice of law. She noted that Daubenmire suffers from an anxiety disorder that is managed with medication and is unrelated to his misconduct. The panel found Risen's testimony to be very credible.

{¶ 11} Two witnesses who had known Daubenmire since he was a child testified that he was a moral, honest, and hardworking person who has tried to overcome his mistakes and who is fit to become a lawyer. Attorney Roger Weaver, who had employed Daubenmire following his conviction and during his law-school breaks, and who still employed him as a paralegal at the time of the hearing, testified that he understood the gravity of Daubenmire's conduct and that he did not make the decision to employ him lightly. Nonetheless, he testified that he admired Daubenmire's efforts to rehabilitate himself at one of the lowest times in his life and strongly believed that he is now a moral, upright, and trustworthy person who is fit to practice law. He stated that he permitted Daubenmire to access his computer system, entrusted him with law-firm funds, and allowed him to interact with clients. Furthermore, he testified that he would not hesitate to have Daubenmire join his law practice if he were admitted to the bar.

### Disposition

{¶ 12} "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard.

> The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law."

*Cincinnati Bar Assn. v. Hennekes*, 110 Ohio St.3d 108, 2006-Ohio-3669, 850 N.E.2d 1201, ¶ 13, quoting *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81, 278 N.E.2d 670 (1972).

{¶ 13} To that end, we require an applicant to the Ohio bar to prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Applicants must establish that they have the ability to exercise good judgment and conduct themselves with a high degree of honesty, integrity, and trustworthiness in their professional affairs; to conduct themselves in accordance with the law and the Rules of Professional Conduct; to avoid acts that exhibit disregard for the health, safety, and welfare of others; and to conduct themselves professionally and in a manner that engenders respect for the law and the profession. *Definitions of Essential Eligibility Requirements for the Practice of Law*, Nos. 3, 4, 5, 6, 10, http://www.supremecourt.ohio.gov/ AttySvcs/admissions/application/03req/default.asp (accessed Sept. 24, 2013).

{¶ 14} When an applicant has been convicted of a felony, we consider a number of additional factors, including (1) the amount of time that has passed since the conviction, (2) whether the applicant has been released from parole, probation, community control, postrelease control, or prison, (3) whether the applicant's rights and privileges have been restored, (4) whether the applicant is

disqualified by law from holding an office of public trust, and (5) how approval of the applicant would impact the public's perception of, or confidence in, the legal profession. Gov.Bar R. I(11)(D)(5)(a)(i) through (iv). The rule also specifies a number of factors that should be considered in assessing the weight and significance of the applicant's prior conduct, including the age of the applicant at the time of the conduct, the recency of the conduct, the seriousness of the conduct, any evidence of rehabilitation, and the candor of the applicant. *See* Gov.Bar R. I(11)(D)(4)(a) through (j).

**{¶ 15}** The board found that Daubenmire had engaged in serious criminal behavior by downloading child pornography for about five years and that but for the fortuitous need for a computer repair, he would have continued this conduct. He committed this offense as an adult, and despite his professed interest in videos depicting teenage girls, some of the files found on his computer involved young children.

**{¶ 16}** On the other hand, the board credited Daubenmire for his efforts to rehabilitate himself, noting that he had fulfilled all the conditions imposed as part of his criminal sentence, obtained an early release from his community-control sanction, engaged in individual therapy in addition to the court-ordered group therapy, and continued treatment until his therapist advised him that it was no longer necessary. He applied for, was admitted to, and successfully completed law school, and he offered a number of character references.

**{¶ 17}** The board also considered Daubenmire's obligation to register as a sexually oriented offender and the negative perception of the legal profession that might arise if an individual held the dual status of registered sex offender and licensed attorney. However, the board declined to consider Daubenmire's status as a registered sex offender as the determinative factor in its calculus and recommended that he be permitted to reapply as a candidate for the July 2014 bar exam—an exam that will occur five years after Daubenmire's release from

community control, three years after his completion of mental-health counseling, and more than halfway through his ten-year obligation to register as a sex offender.

**{¶ 18}** We have never before considered whether an applicant can satisfactorily demonstrate that he possesses the requisite character, fitness, and moral qualifications to take the Ohio bar exam while he is under a continuing duty to register as a sexually oriented offender.

**{¶ 19}** Gov.Bar R. I(11)(D)(5)(a)(i) prohibits the Board of Commissioners on Character and Fitness from approving the character, fitness, and moral qualifications of a candidate who has been convicted of a felony before the candidate is released from parole, probation, community control, postrelease control, or prison. That rule, however, does not mandate the disapproval of applicants who remain obligated to register as sex offenders during the pendency of their applications. Nonetheless, we are troubled by the nature of Daubenmire's conduct—which involved not only the downloading of pornographic photo and video images of minors, including young children, as found by the board, but also the online trading or sharing of those images with others—as well as the five-year duration of that conduct. We are also concerned that even as a college graduate, Daubenmire failed to appreciate the gravity of his conduct—or the fact that the children depicted in those illegal materials were, in fact, victims of his conduct— until after he got caught. And we cannot overlook the very real possibility that admitting a presently registered sex offender to the practice of law will adversely affect the public's perception of the profession as a whole. Thus, while the rules do not mandate that an applicant's character, fitness, and moral qualifications be disapproved before the termination of the applicant's duty to register as a sex offender, we conclude that it is in the best interest of the public and the profession that we do so here.

{¶ 20} Accordingly, we disapprove Daubenmire's pending application, but we will permit him to reapply as a candidate for the July 2018 bar examination by submitting a new application to register as a candidate for admission to the bar and an application to take the bar examination. At that time, he shall submit to a full character and fitness investigation.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., concur in part and dissent in part and would allow the applicant to reapply for the July 2014 bar examination as recommended by the Board of Commissioners on Character and Fitness.

_____

Richard D. Brown Law Office, L.L.C, and Richard Donald Brown, for applicant.

Morrow, Gordon & Byrd, Ltd., and Carolyn Jean Carnes, for the Licking County Bar Association.

_____