[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Daubenmire*, Slip Opinion No. 2024-Ohio-2230.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2230

IN RE APPLICATION OF DAUBENMIRE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Daubenmire*, Slip Opinion No. 2024-Ohio-2230.]

*Attorneys—Character and fitness—Applications to register as candidate for admission to practice of law in Ohio and as candidate to take July 2024 Ohio bar exam—Past criminal conduct—Applicant has established present character, fitness, and moral qualifications by clear and convincing evidence—Applications approved.*

(No. 2024-0405—Submitted May 7, 2024—Decided June 12, 2024.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 877.

_____

**Per Curiam.**

{¶ 1} Applicant, Zachary Charles Daubenmire, of Thornville, Ohio, is a 2011 graduate of the Case Western Reserve University School of Law. In

November 2013, we found that Daubenmire failed to carry his burden of proving that he possessed the requisite character, fitness, and moral qualifications to practice law in Ohio because of his 2007 felony conviction for pandering obscenity involving a minor and his continuing duty to register as a sexually oriented offender until February 2017. *In re Application of Daubenmire*, 137 Ohio St.3d 435, 2013-Ohio-4977, 999 N.E.2d 669, ¶ 1-3, 19-20. We therefore disapproved his application to register as a candidate for admission to the practice of law and authorized him to reapply as a candidate for the July 2018 bar exam. *Id.* at ¶ 3, 20

**{¶ 2}** In November 2022, Daubenmire applied to register as a candidate for admission to the practice of law in Ohio by completing a National Conference of Bar Examiners questionnaire.

**{¶ 3}** Two members of the Licking County Bar Association Admissions Committee interviewed Daubenmire in April 2023. In each of their reports to the admissions committee, the interviewers stated that Daubenmire did not possess the requisite character, fitness, and moral qualifications for admission to the practice of law. Specifically, the interviewers were concerned that Daubenmire tended to minimize his criminal conduct and that he failed to appreciate that his felony offense was not victimless. Citing several incidents that occurred from 2015 through 2017 and Daubenmire's admission to drinking alcohol frequently, the interviewers also expressed concern that Daubenmire exhibited signs of potential alcohol abuse, a pattern of poor anger management, and a pattern of disregard for Ohio laws. Based on the interviewers' reports, the admissions committee issued a final report recommending disapproval of Daubenmire's character, fitness, and moral qualifications to practice law.

**{¶ 4}** Daubenmire appealed the committee's recommendation to the Board of Commissioners on Character and Fitness under Gov.Bar R. I(14). In January 2024, a three-member panel of the board conducted a hearing, during which it heard testimony from Daubenmire and three other witnesses. Thereafter, the panel issued

a report finding that Daubenmire had established his present character, fitness, and moral qualifications by clear and convincing evidence and recommending that his application to register as a candidate for admission to the practice of law in Ohio be approved. In March 2024, the board adopted the panel's report and recommendation by a ten-to-one vote. On June 3, 2024, the board filed a motion to supplement the record with Daubenmire's May 9, 2024 application to take the July 2024 bar exam. No response was filed. We hereby grant that motion.

{¶ 5} The matter is before this court pursuant to Gov.Bar R. I(13)(D)(5)(a) and (b), because Daubenmire's conviction was for a second-degree felony under Ohio law. Because we find that Daubenmire has established that he presently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio, we approve his pending registration application and permit him to sit for the July 2024 bar exam.

**Standard for Assessing an Applicant's Character, Fitness, and Moral Qualifications**

{¶ 6} An applicant for admission to the bar bears the burden of proving by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission. Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others." Gov.Bar R. I(13)(D)(3).

{¶ 7} A record that manifests a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a ground for disapproval. *Id*. In determining whether the record demonstrates such a deficiency, we consider a number of factors set forth in Gov.Bar R. I(13)(D)(3). Among those factors are whether the applicant has been convicted of a felony or engaged in conduct reflecting a pattern of disregard of the laws of this or any other state and

whether there is evidence of an existing and untreated drug or alcohol dependency. Gov.Bar R. I(13)(D)(3)(a), (b), and (e). In determining the weight and significance to give an applicant's prior conduct, we consider several factors, including the recency of the conduct, the seriousness of the conduct, the factors underlying the conduct, whether there is evidence of rehabilitation, whether the applicant has made positive social contributions since the conduct, and the candor of the applicant in the admissions process. *See* Gov.Bar R. I(13)(D)(4)(b), (d), (e), (g), (h), and (i).

**{¶ 8}** In addition, when an applicant has been convicted of a felony, we consider (1) the amount of time that has passed since the applicant's conviction, (2) whether the rights and privileges of the applicant that were forfeited by conviction have been restored by operation of law, expungement, or pardon under the laws of Ohio, (3) whether the applicant is disqualified by law from holding an office of public trust, and (4) how approval of the applicant would impact the public's perception of, or confidence in, the legal profession. *See* Gov.Bar R. V(13)(D)(5)(a)(i) through (iv).

**{¶ 9}** We now turn to the four issues of concern in this case: Daubenmire's 2007 felony conviction, his alcohol use, his anger-management issues, and his alleged pattern of disregarding Ohio's laws.

### Daubenmire's Felony Conviction

**{¶ 10}** In February 2007, Daubenmire was convicted of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(1) and/or (A)(6). During his first character-and-fitness case in 2013, we found that Daubenmire had been raised in a strict religious household and began looking at online pornography while he was still in high school. *Daubenmire*, 137 Ohio St.3d 435, 2013-Ohio-4977, 999 N.E.2d 669, at ¶ 5. While attending college in 2001, he began to download pornographic pictures and videos of children. *Id.*

**{¶ 11}** At both his previous and 2024 character-and-fitness hearings, Daubenmire testified that he was interested in viewing only teenage girls. He

4

admitted that many of the images he downloaded depicted girls under the age of 18, but he explained that some images showed even younger girls because he could not always tell what he was downloading on the file-sharing applications he used to obtain the images. He stated that if he saw images that depicted younger children, he deleted them. He acknowledged that the file-sharing applications allowed other users to access the images if they were stored in a shared folder on his computer.

{¶ 12} Daubenmire's illicit activity was discovered and reported to the authorities in 2006 after his father took the computer that Daubenmire had been using to a repair shop. *Id*. at ¶ 7. Daubenmire cooperated with the resulting criminal investigation, and with the assistance of counsel, he entered a no-contest plea. *Id*. He was sentenced to five years of community control and ordered to register as a sexually oriented offender, perform 100 hours of community service, participate in sexual-offender counseling, and abstain from alcohol. *Id*.

{¶ 13} Daubenmire complied with the conditions of his criminal sentence and was granted early release from his community-control sanction in March 2009. Except for the right to possess a firearm or dangerous ordnance, his rights as a citizen of the United States of America and the state of Ohio were restored at that time. In addition to completing a court-ordered sexual-offender counseling program, Daubenmire voluntarily engaged in additional sexual-health counseling for about two years after his release from community control. He also complied with his ten-year obligation to register as a sexually oriented offender, which terminated in 2017.

{¶ 14} At his 2024 character-and-fitness hearing, Daubenmire testified with candor about what he had learned from his years of sexual-offender and sexual-health counseling. The board found that he had gained valuable knowledge about himself and the reasons that he had sought out pornographic images depicting teenage girls. His sexual-health therapist opined in a June 2012 letter to the Office

of Bar Admissions that Daubenmire's interest in pornography "was not motivated by a sexual deviance disorder or a psychological pathology. Rather, it was the product of complicated sexual conflicts of a young man whose conservative religious background suppressed normal sexual drive."

{¶ 15} The board found that in his testimony before the hearing panel, Daubenmire made no attempts to minimize either the impact of his criminal conduct on the children in the images he viewed or the seriousness of his crime. He explained that any statements he made to the interviewers from the admissions committee regarding his belief that he was not hurting anyone referred to his mindset when he was downloading the illegal materials—and that it in no way reflected his current mindset. He expressed his understanding that the children depicted in those images were victims who were unable to consent and that even though he was not buying or producing child pornography, his viewing of the product alone contributed to their victimization.

{¶ 16} Applying the factors enumerated in Gov.Bar R. I(13)(D)(4) and (5), we observe that it has been more than 17 years since Daubenmire was convicted of pandering obscenity involving a minor. Moreover, there is no evidence to suggest that he has engaged in any kind of sexual misconduct since his felony conviction. Although Daubenmire remains under a weapons disability, the board found that his other rights have been restored and that he is not disqualified by law from holding an office of public trust.

{¶ 17} More than 15 years ago, Daubenmire received an early release from his community-control sanction, and he has not been required to register as a sexually oriented offender for more than six years. Although his crime was reprehensible, the potential negative impact that our approval of Daubenmire's application might have on the public's perception of the legal profession has decreased with his successful completion of the terms of his criminal sentence, his years of psychological counseling, and the passage of time—all of which point to

his successful rehabilitation.  *See* Gov.Bar R. I(13)(D)(5)(a)(iv).  On these facts, the board found, and we agree, that Daubenmire's 2007 felony conviction should not disqualify him from admission to the practice of law.

### Daubenmire's Alcohol Use

{¶ 18} The record shows that Daubenmire has crossed paths with law-enforcement officers on three occasions since his 2007 felony conviction, two of which resulted in convictions of minor misdemeanors—only one of which involved the inappropriate use of alcohol.  Based on that alcohol-related offense and Daubenmire's statements about his drinking habits, the interviewers from the admissions committee suggested that he may be dependent on alcohol.

{¶ 19} At his 2024 character-and-fitness hearing, Daubenmire testified that on July 25, 2017, he was drinking a can of beer in his parked car on private property while playing Pokémon Go (i.e., an electronic game in which players go to different locations to play the game on their cellphones).  He intended to drink one beer while playing and then drive to his parents' home, where he was dog sitting.  He stated that he did not realize that it was illegal to consume alcohol in a parked car on private property and that he had consumed only a couple sips of beer before a police officer approached his vehicle.  He conceded that it was not smart to be drinking in his car before driving, even though he was not impaired.

{¶ 20} The police report from that incident stated that Daubenmire had one open can of beer in the center console of his car and a second unopened can in the vehicle.  The officer did not suspect alcohol impairment or perform a breathalyzer or field-sobriety test on Daubenmire, and he did not charge Daubenmire with physical control or operating a vehicle while intoxicated.  Instead, the officer charged Daubenmire with a minor-misdemeanor offense of having an open container of alcohol in a stationary motor vehicle under Hebron Codified Ordinances 529.07(b)(5).  Daubenmire paid a fine, thereby admitting his guilt.  He has no history of any other alcohol-related traffic or criminal charges.

**{¶ 21}** During his 2023 character-and-fitness interview, Daubenmire also disclosed to the interviewers that he often drank a "tallboy" beer (i.e., a beer larger than the standard 12-ounce can) before bed to help him sleep. At his 2024 character-and-fitness hearing, Daubenmire testified that after the interviewers expressed their concerns about his alcohol use, he stopped consuming beer before going to bed and sought healthier ways to help him fall asleep. He explained that it had been important for him to get to sleep at a reasonable time because he and his wife were getting up multiple times a night to care for their two daughters who, at that time, were both under the age of two.

**{¶ 22}** In light of the interviewers' concerns, Daubenmire testified that before the 2024 character-and-fitness hearing, he submitted to an alcohol assessment conducted by Trevor C. Davis, a licensed social worker and chemical-dependency counselor. Davis issued a report in which he found that Daubenmire's self-described drinking habits were "within or near" low-risk guidelines established by the National Institute on Alcohol Abuse and Alcoholism and the National Institutes of Health. Davis identified some factors for Daubenmire's risk profile, including elevated stress, mental-health issues, his legal history consisting of the single open-container case, and general demographics—taking into account the fact that attorneys are at an elevated risk for alcohol- and substance-abuse issues when compared to the general population. Davis determined, however, that Daubenmire did not have an existing alcohol-use disorder.

**{¶ 23}** In addition to these facts, Daubenmire presented testimony at his 2024 character-and-fitness hearing from his employer, attorney Roger Weaver, who stated that he had never observed Daubenmire impaired, with alcohol on his breath, or hung over at work. Another attorney, a realtor, and a title-company employee, each of whom have worked in the same building as Daubenmire, submitted affidavits stating that they had seen Daubenmire at work on a daily (or

almost daily) basis and that they had never seen any evidence that he had used or was under the influence of drugs or alcohol at work.

{¶ 24} Applying the factors enumerated in Gov.Bar R. I(13)(D)(4), we observe that it has been nearly seven years since Daubenmire's open-container conviction and he has had no other citations for alcohol-related conduct. And after the interviewers from the admissions committee expressed concern about his habit of drinking a beer to help him sleep, Daubenmire stopped engaging in that conduct and sought an alcohol-use assessment, which resulted in a professional's determination that Daubenmire does not have an alcohol-use disorder. Moreover, Daubenmire has presented evidence showing that his alcohol consumption has had no impact on his work. The board found, and we agree, that Daubenmire has presented clear and convincing evidence that his alcohol use is not a character-and-fitness issue that should result in disapproval of his pending application.

### Anger Management and Alleged Pattern of Disregarding Laws

{¶ 25} Lastly, the interviewers from the admissions committee suggested that Daubenmire's felony conviction for pandering obscenity involving a minor, open-container conviction, and a disorderly-conduct conviction show that he has engaged in a pattern of disregarding the laws of this state. The interviewers also claimed that Daubenmire's "cumulative conduct"—which includes three incidents (i.e., a bar fight, an argument with his cousin, and the disorderly-conduct offense) concerning Daubenmire's anger management—could affect his ability to conduct himself in a manner that engenders respect for the law and the profession. Each of these three incidents are discussed in turn.

{¶ 26} On November 22, 2015, Daubenmire called the Hebron Police Department to report that three men had assaulted him at a bar near his home. According to the police report, Daubenmire told police that he entered the bar after the Ohio State University football team had lost a game and that to tease his acquaintances at the bar, he said, "How about them Buckeyes?" He stated that

sometime thereafter, a man approached him and asked if he was a registered sex offender. Daubenmire claimed that after he answered that question in the affirmative, the man got mad, stated that he had a child, and then grabbed Daubenmire and took him to the ground. Daubenmire further stated that he was then punched and kicked by that man and two others until other people stepped in to break up the fight.

**{¶ 27}** According to the police report, one of the men admitted that he had asked Daubenmire if he was a sex offender but told the officer that Daubenmire had elbowed him in the stomach before he took Daubenmire to the ground in self-defense. The two other men purportedly involved in the incident told police that they never touched Daubenmire. No charges were filed against Daubenmire or any of the three men over the incident.

**{¶ 28}** During his 2023 character-and-fitness interview and at his 2024 hearing, Daubenmire also described an incident in which he and his cousin got into a shouting match on a golf course sometime in 2016. He testified that there was no violence and that his father stepped in to calm him and his cousin down.

**{¶ 29}** On October 15, 2016, at a Dollar General store, Daubenmire attempted to return or exchange a pair of earbuds that did not work. The store clerk called the Hebron Police Department and reported that Daubenmire got mad when she would not accept the return without a receipt, cursed at her, and threw the earbuds at her face. She stated that the earbuds struck her, and the officer who responded to the call observed a scratch on the right side of her face. Daubenmire told the officer that he had ripped up the earbuds and threw them into the air before leaving the store.

**{¶ 30}** The officer reviewed the surveillance video of the incident and reported that "it was clear that Mr. Daubenmire intentionally threw the [earbuds] at the victim resulting in the scratch to her face." Although Daubenmire was charged with misdemeanor assault and disorderly conduct, the prosecuting attorney

dismissed the assault charge. Daubenmire pleaded guilty to the disorderly-conduct charge, a minor-misdemeanor offense.

**{¶ 31}** At his 2024 character-and-fitness hearing, Daubenmire testified that he and the store clerk had shouted at each other after the clerk refused to allow him to exchange the earbuds without a receipt. He stated that he tore up the earbuds and threw them in the air. Daubenmire admitted that he was a "complete jerk," but he denied assaulting the clerk or throwing the earbuds at her. He said that he believed the prosecutor had dismissed the assault charge after determining that it was not supported by the evidence.

**{¶ 32}** The hearing panel reviewed the store's security video of the incident and found that it corroborated Daubenmire's version of events because (1) his throwing motion appeared to be directed upward, (2) the clerk did not react as though she had been struck, and (3) the earbuds appeared to land on the ground on Daubenmire's side of the counter.

**{¶ 33}** During his testimony at the 2024 hearing, Daubenmire expressed remorse about the Dollar General incident and admitted that his behavior was unacceptable. More importantly, he explained that after the incident, he recognized that he had anger issues and voluntarily sought mental-health counseling to address them. Daubenmire testified that he completed one and a half to two years of counseling, during which he learned tools and strategies to appropriately deal with his anger before it reached the point of boiling over.

**{¶ 34}** There was no evidence presented at the 2024 hearing that Daubenmire had engaged in any other angry outbursts since the incident with the store clerk in October 2016—a period of more than seven years—or committed any alcohol-related offenses since his July 2017 open-container offense.[1] Furthermore,

---

1. Daubenmire filed a supplemental disclosure with the office of bar admissions in December 2023, in which he stated that on November 30, 2023, he had been cited for failure to restrain a child. At his 2024 character-and-fitness hearing, Daubenmire testified that he took his oldest daughter for a

Daubenmire testified that he did not register to take the bar exam in 2018—when he was eligible to do so under our prior order—because he knew that he needed to address his anger-management issues and demonstrate to this court that he was past them.

**{¶ 35}** In addition, Daubenmire testified that he and his wife have been participating in couple's counseling to deal with the stressors associated with two working parents caring for two young children, and he explained that the counseling has been helpful. The board noted that since his arrest in 2007, Daubenmire has demonstrated a pattern of seeking mental-health treatment when needed, committing himself to that treatment for significant periods, and learning how to improve his problematic behavior.

**{¶ 36}** At Daubenmire's 2024 character-and-fitness hearing, Attorney Weaver testified that he had known Daubenmire's family for many years and that Daubenmire had worked full time in his office since about 2012. He stated that he was aware of Daubenmire's felony conviction and that Daubenmire had openly shared and discussed the above-described incidents with him. Weaver believed that Daubenmire has benefitted from counseling and matured with the passage of time and by becoming a husband and father. He testified that Daubenmire maintained a professional demeanor at work and that he found no reason to believe that Daubenmire has any current anger-management issues that would affect his ability to conduct himself competently, ethically, or professionally. Not only did Weaver express his opinion that Daubenmire currently possesses the character and fitness

---

drive that evening to help her fall asleep and that he was pulled over after he had swerved while trying to reach for a glass of milk that she had thrown. He stated that he was cited for failure to restrain his daughter because she does not like to be restrained and had wiggled the car-seat straps down below her shoulders. Daubenmire did not contest the charge and paid a fine. The board made no mention of this incident in its report, and we find that it has no bearing on his current fitness to practice law.

necessary to practice law in Ohio, but he also testified that he intends to employ him as an attorney if he is able to take and pass the bar exam.

{¶ 37} The board acknowledged that Daubenmire's disorderly-conduct conviction, the alleged bar assault, and his public argument with his cousin may have raised significant concerns had he submitted a registration application in 2018. Citing Daubenmire's evidence—including his voluntary completion of almost two years of mental-health counseling to address his anger-management issues and the passage of more than seven years with no further incidents related to anger management—the board concluded that the incidents from 2015 through 2016 that raised concerns about Daubenmire's anger management are "not weighty enough to be disqualifying" now. We agree with the board's assessment regarding Daubenmire's anger management, and we also find that Daubenmire's felony conviction combined with his two minor-misdemeanor convictions do not constitute a pattern of disregard of the law sufficient to warrant disapproval of Daubenmire's application, *compare In re Application of Dickens*, 106 Ohio St.3d 128, 2005-Ohio-4097, 832 N.E.2d 725, ¶ 4-7, 15 (applicant's long history of criminal and traffic convictions combined with multiple court-ordered evictions demonstrated a pattern of disregard for the laws of this and other states that contributed to disapproval of his bar exam application); *In re Application of Kapel*, 72 Ohio St.3d 532, 532-533, 651 N.E.2d 955 (1995) (applicant's disorderly-conduct conviction and sustained pattern of disregarding traffic laws demonstrated that he lacked the requisite character and fitness to practice law).

**Disposition**

{¶ 38} At present, it has been more than 17 years since Daubenmire was convicted of pandering obscenity involving a minor, more than 15 years since he was released from community control, and more than seven years since he was required to register as a sexually oriented offender. And there is no evidence that he has engaged in any kind of sexually inappropriate behavior since the pandering-

obscenity conviction. It has also been more than seven years since Daubenmire's angry outburst toward a store clerk resulted in a minor-misdemeanor disorderly-conduct conviction and almost seven years since his open-container conviction.

**{¶ 39}** Daubenmire has testified candidly about each of the incidents discussed above and acknowledged the wrongfulness of his conduct. He participated in several years of mental-health counseling to address his sexually oriented misconduct and voluntarily sought and committed himself to almost two years of additional mental-health treatment to address his subsequent anger-management issues. And most recently, he has participated in marital counseling with his wife to help with managing the everyday stresses of marriage and parenting two young children. He has demonstrated his growth and maturation through his willingness to seek help when his stress begins to affect his mental health. He also wisely delayed his second application to register as a candidate for the bar exam until he was able to demonstrate that his anger-management issues had been under control for an extended period. Moreover, in his sworn application to take the July 2024 bar exam, Daubenmire answered "no" to all questions about various types of conduct or actions that could have been taken against him since he filed his registration application. He has therefore indicated that he has no new information, conduct, or behavior to report that could call into question his ability to practice law in a competent, ethical, and professional manner.

**{¶ 40}** In addition, Daubenmire has found a dedicated mentor in Weaver and demonstrated his commitment to the profession by working competently, diligently, and professionally as a law clerk at Weaver's firm for about 12 years. In short, Daubenmire has accepted responsibility for his past actions, made efforts to learn from those actions and avoid repeating them, and has successfully demonstrated his rehabilitation.

**{¶ 41}** Upon consideration of the record and the applicable rules, we find that Daubenmire has carried his burden of proving that he currently possesses the

requisite character, fitness, and moral qualifications for admission to the practice of law.

**{¶ 42}** Accordingly, we grant the motion of the board to supplement the record, adopt the board's report, approve Daubenmire's pending application, and permit him to sit for the July 2024 bar exam.

Judgment accordingly.

DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., and FISCHER, J., dissent and would not allow Daubenmire to take the July 2024 bar exam.

————————————

Richard D. Brown Law Office, L.L.C., and Richard D. Brown, for applicant.

Reese Pyle Meyer, P.L.L., and Brian C. Reed, for the Licking County Bar Association.

————————————